M. Constance JONAS, Stuart Z. Hirschman, Harold Holliday and James L. Robinson, Jr., Plaintiffs, and Paul W. Preisler, Joseph P. Roddy and David M. Grant, et al., Intervenor-Plaintiffs,

v.

Honorable Warren A. HEARNES et al., Defendants, and F. V. Heinkel et al., Intervenor-Defendants,

and

Missouri State Chamber of Commerce et al., Intervenor-Defendants.

No. 14523-2.

United States District Court
W. D. Missouri, W. D.

Dec. 30, 1964.

Irving Achtenberg and George H. Morgan, Kansas City, Mo., for plaintiff.

W. W. Beckett, A. J. Hoffman, A. D. Sappington, Columbia, Mo., and Paul W. Preisler, David M. Grant, St. Louis, Mo., for intervenor-plaintiffs.

Thomas F. Eagleton, Atty. Gen., and Joseph Nessenfeld, Jefferson City, Mo., for defendants.

Edwards, Hess & Collins, Macon, Mo., and Lathrop, Righter, Gordon & Parker, Kansas City, Mo., for intervenor-defendants.

Before RIDGE, Circuit Judge, and GIBSON and BECKER, District Judges.

GIBSON, District Judge.

Plaintiffs to this action are four resident citizens and voters from areas of Jackson County, Missouri, suing for themselves and other Missouri voters similarly situated. Intervenor-plaintiffs are three resident citizens and voters in the City of St. Louis, representing themselves and other Missouri voters similarly situated.

Defendants are the Missouri Secretary of State, the County Clerk of Jackson County, Missouri, and the members of the Kansas City Board of Election Commissioners, sued in their official capacities. Intervenor-defendants Heinkel, et al., are resident citizens and voters of Boone, Greene, Atchison, Linn, Randolph, Saline, Phelps, Cedar, Webster, Stoddard, Adair, Schuyler, Davies, Putnam, Pike, Cooper, St. Francis, Henry, Wright, Johnson, Perry, Pettis, Clinton, Scotland, Cole, Gasconade, Polk, Christian, St. Genevieve, and Warren Counties, representing themselves and other Missouri voters similarly situated. Intervenor-defendants, Missouri State Chamber of Commerce and Missouri Farm Bureau Federation, are Missouri corporations appearing for themselves and their respective memberships, which reside in various counties of Missouri.

It has been stipulated by the parties that plaintiffs and plaintiff-intervenors adequately represent all areas of the state which may be underrepresented. The Court is also of this opinion.

The parties have further stipulated that the defendants adequately represent the class of state and county agencies for which they have been sued in a representative capacity, and that intervenor-defendants adequately represent voters in allegedly overrepresented areas of the state and voters in other areas of the state who are not represented by Plaintiffs or Intervenor-plaintiffs. The Court agrees that there is adequate representation as stated in this stipulation.

Oral hearing before the three judge-court was conducted on October 12, 1964, wherein all the above-mentioned parties were represented.

It is alleged that the present legislative apportionment scheme, as created by Article III, §§ 5 and 7 of the Missouri Constitution, V.A.M.S. and RSMo 1959 (Supp.1963) § 22.010, V.A.M.S., and RSMo 1959 §§ 22.020 to 22.030, V.A.M.S., dealing with Senatorial districts and Article III, §§ 2 and 3 of the Missouri Constitution and RSMo 1959 §§ 22.040 and 22.050, V.A.M.S., dealing with Legislative districts, is void in that it creates invidious discrimination among the voters of various districts and thus does not comport with the equal protection guarantees of the Fourteenth Amendment of the Constitution of the United States and Article I, Section 2 of the Missouri Constitution, and that the constitutional and statutory provisions are themselves unconstitutional.

Plaintiffs further contend that the reapportionment statutes, RSMo 1959 (Supp.1963), § 22.010, V.A.M.S., and RSMo 1959, §§ 22.020 to 22.050, V.A.M.S., and Article III, Sections 2, 3, 5, and 7 of the Missouri Constitution setting forth the apportionment scheme and standards of application, contain so many inherent inequalities that they "result in a distortion of the constitutional system as established, defined and guaranteed by the Fourteenth Amendment to the

Constitution of the United States, and Article I, Section 2 of the Missouri Constitution, and that this distortion prevents the General Assembly of Missouri from being a body representative of the people of the State, debases the vote of plaintiffs, and denies to plaintiffs the equal protection of the laws." Plaintiffs further allege that this combination permits a minority of the people of Missouri to control the Missouri General Assembly.

Article I, Section 2 of the Constitution of the State of Missouri which is allegedly violated reads:

"Promotion of general welfare—natural rights of persons—equality under the law—purpose of government. That all constitutional government is intended to promote the general welfare of the people; that all persons have a natural right to life, liberty, the pursuit of happiness and the enjoyment of the gains of their own industry; that all persons are created equal and are entitled to equal rights and opportunity under the law; that to give security to these things is the principal office of government, and that when government does not confer this security, it fails in its chief design."

The sections of the Missouri Constitution which plaintiffs challenge as unconstitutional are §§ 2, 3, 5, and 7 of Article III and read as follows:

"Section 2. Election of representatives—terms—apportionment. The house of representatives shall consist of members elected at each general election and apportioned in the following manner. The ratio of representation shall be the whole number of inhabitants of the state divided by the number two hundred. Each county having one ratio, or less, shall elect one representative; each county having two and a half times the ratio shall elect two representatives; each county having four times the ratio shall elect three representatives; each county having

six times the ratio shall elect four representatives, and so on above that number giving an additional member for every two and a half additional ratios. * * *"

"Section 3. Representative districts in larger counties. When any county is entitled to more than one representative, the county court, and in the city of St. Louis the body authorized to establish election precincts, shall divide the county into districts of contiguous territory, as compact and nearly equal in population as may be, in each of which one representative shall be elected."

"Section 5. Senators—number—terms—senatorial districts. The senate shall consist of thirty-four members elected by the qualified voters of the respective districts for four years. For the election of senators, the state shall be divided into convenient districts of contiguous territory, as compact and nearly equal in population as may be. No county shall be divided in the making of districts composed of more than one county."

"Section 7. Senatorial apportionment commission—number, method of selection, and compensation of members—duties of commission—effect of action and inaction * * * The commission shall reapportion the senators by dividing the population of the state by the number thirty-four, and the population of no district shall vary from the quotient by more than one-fourth thereof. * * * (S)enators shall be elected according to such districts until a reapportionment is made as herein provided * * *."

Under stipulation the only question involved is whether the House and Senate are apportioned according to Constitutionally permissible standards. The sections of the statutes challenged, RSMo 1959 (Supp.1963), § 22.010, V.A.M.S., and RSMo 1959, §§ 22.020 to 22.050, V.A.

M.S., merely implement the challenged constitutional provisions. Therefore, this opinion will deal primarily with the constitutional sections involved.[1]

1. "§ 22.010 State senatorial districts—(report of senatorial redistricting commission).—1. The senatorial redistricting commission, as provided for under and by virtue of section 7, article III, of the Constitution of the State of Missouri, now files its statement, having agreed upon a senatorial redistricting and which final report the commission files within six months of the time fixed for the appointment of said commission.

"2. The commission, has decided and determined that the city of St. Louis is entitled under the constitution to six senators. The number of said six districts assigned to the city of St. Louis are as follows: Districts numbers 1, 2, 3, 4, 5, and 6.

"3. The commission has decided and determined that St. Louis county is entitled under the constitution to five senators. The numbers of said five districts assigned to St. Louis county are as follows: Districts numbers 7, 13, 14, 15, and 24.

"4. The commission has decided and determined that Jackson county is entitled under the constitution to four senators. The numbers of said four districts assigned to Jackson county are as follows: Districts numbers 8, 9, 10, and 11.

"5. The commission further reports that the remaining part of the state of Missouri, not including the city of St. Louis, St. Louis county, or Jackson county has been divided into nineteen senatorial districts. The numbers of the said districts and the counties included therein are as follows:

"District number 12: Atchison, Holt, Nodaway, Andrew, Worth, Harrison, Mercer, Grundy, Putnam, Sullivan;

"District number 16: Daviess, Caldwell, Ray, Livingston, Carroll, Lafayette, Saline, Pettis;

"District number 17: Platte, Clinton, Clay;

"District number 18: Schuyler, Scotland, Clark, Adair, Knox, Lewis, Macon, Shelby, Marion, Ralls;

"District number 19: Linn, Chariton, Randolph, Monroe, Howard, Boone;

"District number 20: St. Charles, Warren, Montgomery, Franklin, Gasconade, Osage;

"District number 21: Audrain, Pike, Callaway, Cole, Lincoln;

"District number 22: Jefferson, St. Francois, Iron, Dent, Reynolds, Shannon;

"District number 23: Wayne, Carter, Oregon, Ripley, Butler, Dunklin;

"District number 25: Madison, Bollinger, Stoddard, New Madrid, Pemiscot;

"District number 26: Dallas, Laclede, Pulaski, Phelps, Crawford, Washington;

"District number 27: St. Genevieve, Perry, Cape Girardeau, Scott, Mississippi;

"District number 28: Newton, McDonald, Lawrence, Barry, Stone, Taney;

"District number 29: Christian, Webster, Wright, Texas, Douglas, Ozark, Howell;

"District number 30: Greene;

"District number 31: Cass, Bates, Vernon, Johnson, Henry;

"District number 32: Barton, Cedar, Dade, Jasper;

"District number 33: Benton, Cooper, Camden, Miller, Moniteau, Morgan, Hickory, St. Clair, Maries, Polk;

"District number 34: Buchanan, DeKalb, Gentry;

"6. We, the undersigned members, having agreed upon the senatorial districts of the state of Missouri and to this report, all as provided for under and by virtue of section 7, article III, of the Constitution of the State of Missouri, do hereby respectfully file and submit our final report fully showing the total of thirty-four senatorial districts of this state, with the numbers thereof.

"7. We respectfully request the secretary of state to certify to the proper redistricting authorities of the city of St. Louis, St. Louis county and Jackson county, a certified copy of this report so that they may discharge their duties in accordance with the provisions of the constitution (Final report of state senatorial redistricting commission filed July 13, 1961)".

"22.020. Secretary of state to certify number of senatorial districts. Within sixty days after any commission acting under section 7 of article III of the constitution files its statement with the secretary of state, the secretary of state shall certify to the county courts of the various counties and to the board of election commissioners in the city of St. Louis the number of districts and the counties included in the districts and the number of districts in counties and in the city of St. Louis as contained in the statement filed with the secretary of state by the commission."

"22.030. County courts and board of election commissioners in St. Louis city to certify senatorial districts. On or before March first following the certification by the secretary of state as pro-

Defendants and intervenor-defendants concede that the House is not apportioned in accordance with constitutionally acceptable principles as enunciated in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); WMCA, Inc. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964); Lucas v. Forty-Fourth General Assembly of the State of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964); Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964); Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Roman v. Sincock, 377 U.S. 695,[1] 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964) and Wesberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481 (1963).

Plaintiffs' exhibits demonstrating the malapportionment of the present House of Representatives are quite extensive. The Court therefore cites only a number of the more explicative examples to demonstrate this malapportionment.

Worth County with a population of 3,936 by the 1960 census, has one representative. Likewise the following have one representative: Carter County, popu-

vided in section 22.020, the board of election commissioners of the city of St. Louis and the county courts of those counties which by the report are entitled to more than one senator, shall certify to the secretary of state a complete statement of the senatorial districts established therein; and in the event that the board of election commissioners of the city of St. Louis or the county courts of the counties fail to comply with this section, the number of senators in the districts to be elected at the next election shall be nominated and elected by the electorate from the state at large; but the persons nominated and elected shall reside in the city or the county entitled to the senators."

"22.040. Apportionment of representatives to each county. The house of representatives shall consist of the number of members determined and apportioned in accordance with section 9, article III of the constitution. Representatives shall be elected on the first Tuesday after the first Monday in November, in the year 1958, and every two years thereafter."

"22.050. Counties entitled to more than one representative and the city of St. Louis to be divided into legislative districts—alteration of districts. After each decennial census of the United States becomes effective under section 1.100, RSMo, the secretary of state shall forthwith certify to the county courts of the several counties, which are entitled by any apportionment to two or more representatives, and to the board of election commissioners in the city of St. Louis, the number of representatives to be elected in the respective counties and in the city of St. Louis. Within sixty days after being officially so informed by the secretary of state, the county court of the several counties and the board of election commissioners

of St. Louis shall divide their respective counties and city into representative districts of compact and contiguous territory corresponding in number to the representatives to which the county or city is entitled, and in population as nearly equal as may be in each one of which the qualified voters shall elect one representative, who is a resident of such district. After each decennial census the districts may be altered one time as public convenience requires. On its own motion, or on petition of five hundred or more qualified voters of the county or of the city, the county court of the counties or the board of election commissioners in the city of St. Louis shall hold a public hearing to determine the necessity for altering any district. The population of the county or of the city shall be divided by the number of representative districts in the county or city and proof at the hearing that by the last decennial census of the United States taken since the last districting was made the population of any one district varies from the quotient by more than one-fourth thereof is *prima facie* evidence that public convenience requires that a redistricting be made. If the county courts or board of election commissioners finds that public convenience requires that redistricting be made, they shall by an order entered of record redistrict the county or city into representative districts in the manner prescribed by the constitution for the districts. Within thirty days after making any districting, the county court or board of election commissioners in the city shall file the divisions or alteration and the names and descriptions of the districts with the county clerk of the county or the circuit clerk in the city, and certify the same to the secretary of state.

lation 3,973; Hickory County, population 4,516; Schuyler County, population 5,052. At the other end of the spectrum, St. Louis County with a population of 703,532 has fourteen representatives which means that one representative in this county represents on the average 50,252 persons. St. Louis City, population 750,026 has 15 representatives which means an average of 50,002 persons for each representative. Jackson County has a population of 622,732 and 13 representatives, which means an average of 47,902 persons per representative for that county.

 Significantly by the 1960 census and under the present apportionment, there are thirty-eight counties in which one representative represents less than 10,000 population while in thirty-eight counties and the city of St. Louis one representative represents more than 20,000 people. By the present ratio of representation in Worth County, i. e. one representative for each 3,936 persons, a county of the population of St. Louis County, 703,532 would have approximately 178 representatives. The malapportionment is patent, under recent Supreme Court decisions calling for districts with approximate equality of population. As set forth in Reynolds v. Sims, supra, at 576, 84 S.Ct. at 1389:

"(W)e necessarily hold that the Equal Protection Clause requires both houses of a state legislature to be apportioned on a population basis."

and at 579, 84 S.Ct. at 1390:

"Whatever the means of accomplishment, the overriding objective must be substantial equality of population among the various districts, so that the vote of any citizen is approximately equal in weight to that of any other citizen in the State."

The Court reasoned that:

"State legislatures are, historically, the fountainhead of representative government in this country. A number of them have their roots in colonial times, and substantially antedate the creation of our Nation and our Federal Government. In fact, the first formal stirrings of American political independence are to be found, in large part, in the views and actions of several of the colonial legislative bodies. With the birth of our National Government, and the adoption and ratification of the Federal Constitution, state legislatures retained a most important place in our Nation's governmental structure. But representative government is in essence self-government through the medium of elected representatives of the people, and each and every citizen has an inalienable right to full and effective participation in the political processes of his State's legislative bodies. Most citizens can achieve this participation only as qualified voters through the election of legislators to represent them. Full and effective participation by all citizens in state government requires, therefore, that each citizen have an equally effective voice in the election of members of his state legislature. Modern and viable state government needs, and the Constitution demands, no less.

\* \* \* \* \* \*

"With respect to the allocation of legislative representation, all voters, as citizens of a State, stand in the same relation regardless of where they live. Any suggested criteria for the differentiation of citizens are insufficient to justify any discrimination, as to the weight of their votes, unless relevant to the permissible purposes of legislative apportionment." Reynolds, supra, pp. 564, 565, 84 S.Ct. p. 1383.

The Court further reasoned that:

"Legislators represent people, not trees or acres. Legislators are elected by voters, not farms or cities or economic interests. As long as ours is a representative form of government, and our legislatures are those instruments of government elected directly by and directly representa-

tive of the people, the right to elect legislators in a free and unimpaired fashion is a bedrock of our political system. It could hardly be gainsaid that a constitutional claim has been asserted by an allegation that certain otherwise qualified voters had been entirely prohibited from voting for members of their state legislature. And, if a State should provide that the votes of citizens in one part of the State should be given two times, or five times, or 10 times the weight of votes of citizens in another part of the State, it could hardly be contended that the right to vote of those residing in the disfavored areas had not been effectively diluted. It would appear extraordinary to suggest that a state could be constitutionally permitted to enact a law providing that certain of the state's voters could vote two, five, or 10 times for their legislative representatives, while voters living elsewhere could vote only once. And it is inconceivable that a state law to the effect that, in counting votes for legislators, the votes of citizens in one part of the State would be multiplied by two, five, or 10, while the votes of persons in another area would be counted only at face value, could be constitutionally sustainable. Of course, the effect of state legislative districting schemes which give the same number of representatives to unequal numbers of constituents is identical. Overweighting and overvaluation of the votes of those living here has the certain effect of dilution and undervaluation of the votes of those living there. The resulting discrimination against those individual voters living in disfavored areas is easily demonstrable mathematically. Their right to vote is simply not the same right to vote as that of those living in a favored part of the State. Two, five, or 10 of them must vote before the effect of their voting is equivalent to that of their favored neighbor. Weigh-ing the votes of citizens differently, by any method or means, merely because of where they happen to reside, hardly seems justifiable. One must be ever aware that the Constitution forbids 'sophisticated as well as simple-minded modes of discrimination.' (citations)" Reynolds, supra, pp. 562, 563, 84 S.Ct. p. 1382.

The Court did recognize that some variations from a strict and mathematically precise population based apportionment would be permitted. It stated at p. 577, 84 S.Ct. at p. 1389, that:

"By holding that as a federal constitutional requisite both houses of state legislature must be apportioned on a population basis, we mean that the Equal Protection Clause requires that a State make an honest and good faith effort to construct districts, in both houses of its legislature, as nearly of equal population as is practicable. We realize that it is a practical impossibility to arrange legislative districts so that each one has an identical number of residents, or citizens, or voters. Mathematical exactness or precision is hardly a workable constitutional requirement."

and at page 579, 84 S.Ct. page 1391:

"So long as the divergencies from a strict population standard are based on legitimate considerations incident to the effectuation of a rational state policy, some deviations from the equal-population principle are constitutionally permissible with respect to the apportionment of seats in either or both of the two houses of a bicameral state legislature. But neither history alone, nor economic or other sorts of group interests, are permissible factors in attempting to justify disparities from population-based representation. Citizens, not history or economic interests, cast votes. Considerations of area alone provide an insufficient justification for deviation from the equal-population principle."

The Court warned of the permissible nature of any variations from the strict population apportionment at page 565, 84 S.Ct., page 1383:

"Any suggested criteria for the differentiation of citizens are insufficient to justify any discrimination, as to the weight of their votes, unless relevant to the permissible purposes of legislative apportionment."

The Court preferred to state only the guidelines and principles in Reynolds, supra, and the companion cases. It recognized that it set forth no definite tests or yardsticks with which to measure the variances which might be necessary or permissible in different states. It preferred to leave this job to case-by-case decisions as the various apportionment schemes should come before the lower courts.

However, it is apparent under these guidelines and principles that Section 2 of Article III of the Constitution of the State of Missouri and the reapportionment statute pursuant thereto, RSMo 1959, § 22.040, V.A.M.S., are violative of the equal protection clause of the Fourteenth Amendment of the United States Constitution. Section 3 of Article III, relating to districts within a county, and the reapportionment statute pursuant thereto, RSMo 1959, § 22.050, V.A.M.S., on their face are not constitutionally void, and are susceptible to being worked into a constitutionally permissible scheme of apportionment. The same applies to Article III, Section 5, setting forth the number of senators and stating that the districts "shall be * * * compact and nearly equal in population as may be."

Article III, Section 7, and the reapportionment statutes RSMo 1959 (Supp.1963), § 22.010, V.A.M.S., and RSMo 1959, §§ 22.020 and 22.030, RSMo 1959, allowing a variance of 25 per cent each way from the mathematical quotient, do not comport with the federal decisions and in particular the guidelines laid down in Reynolds v. Sims, supra, in that the one-fourth permissible variance does not result in districts "as nearly of equal population as is practicable." (L.C. 577, 84 S.Ct. 1. c. 1390.)

A plethora of facts concerning the Missouri Senate is presented to the Court for consideration in this case. Those examples cited hereinafter constitute valid Senatorial districts under the present Missouri apportionment laws, but violate the principles handed down in the recent Supreme Court cases dealing with the subject. (cited supra) In considering the facts concerning the Missouri Senate, the plaintiffs have suggested a term, the "Ideal District" which plaintiffs say has a population of 127,053. This figure is computed by dividing the total population of the State of Missouri in 1960, i. e. 4,319,813 by 34, the number of Senatorial districts. This is *in part* the apportionment scheme provided by Article III, Section 7 which provides that the districts shall be reapportioned "by dividing the population of the state by the number thirty-four, and the population of no district shall vary from the quotient by more than one-fourth thereof." This permissible one-fourth variation is the source of difficulty. Does it comport with the constitutional guidelines recently handed down by the Supreme Court? We hold it does not.

Plaintiffs' exhibit A lists all thirty-four Senatorial districts with a percentage comparison of that district with the "Ideal District." Considering the "Ideal District" to be 100 per cent, the following district variations from that 100 per cent occur under the present scheme and the 1960 census.

1. The 29th District comprised of seven counties with a total population of 96,477 is 75.50 per cent of "Ideal."

2. The 12th District comprised of ten counties with a total population of 99,666 is 78.45 per cent of "Ideal."

3. The 33d District comprised of ten counties with a total population of 101,049 is 79.53 per cent of "Ideal."

4. The 28th District comprised of six counties with a total population of 102,486 is 80.66 per cent of "Ideal."

5. The 23d District comprised of six counties with a total population of 105,347 is 82.91 per cent of "Ideal."

6. The 34th District comprised of three counties with a total population of 106,600 is 83.90 per cent of "Ideal."

7. The 32d District comprised of four counties with a total population of 106,738 is 84.01 per cent of "Ideal."

Between this end of the range, where the residents of these districts are over-represented, i. e. have fewer persons per Senator, and the other extreme where the residents of those districts are under-represented or have more persons per Senator than at the "Ideal" figure, there are seventeen districts whose variation from the "Ideal District" is ten per cent or less, either over or under the "Ideal" figure.

The following districts are those which occur at the other extreme from those already listed, supra. The residents of these are underrepresented in comparison to the "Ideal District."

1. The 14th District comprised of part of St. Louis County with a population of 139,866 is 110.08 per cent of "Ideal."

2. The 13th District also comprising a part of St. Louis County has a population of 140,031 and is 110.21 per cent of "Ideal."

3. The 20th District comprised of six counties with a total population of 140,445 is 110.56 per cent of "Ideal."

4. The 7th District comprised of part of St. Louis County with a population of 142,127 is 111.86 per cent of "Ideal."

5. The 15th District also comprising a part of St. Louis County has a population of 142,769 and is 112.36 per cent of "Ideal."

6. The 16th District comprised of eight counties with a total population of 149,567 is 117.64 per cent of "Ideal."

7. The 8th District comprised of part of Jackson County with a population of 152,146 is 119.74 per cent of "Ideal."

8. The 11th District also comprising a part of Jackson County has a population of 154,870 and is 121.81 per cent of "Ideal."

9. The 10th District also comprising a part of Jackson County has a population of 155,428 and is 122.33 per cent of "Ideal."

The 9th Senatorial District exceeds even the present limits provided by the Missouri Constitution but this is not a basis used by plaintiffs for attacking the present apportionment scheme.

Construing these facts in another fashion, it may be noted that the 29th District and the 10th District as constituted under the present Missouri apportionment scheme vary by almost 60,000 persons, nearly two-thirds of the number of persons residing in the 29th District by 1960 census. Again using the 10th District for comparison with the 12th, 33d, 28th, 23d, 34th and 32d Districts, it has almost 50,000 more inhabitants than the most populous of these, nearly half the number residing in the most populous of these districts, the 32d with its 106,738 inhabitants.

The present Senatorial Districts with a disparity of 96,477, the lowest in population and 160,288 as the most populous, do not comport with constitutionally permissible standards as laid down in Reynolds v. Sims, supra, and with the guarantees of equal protection of law insured by the Fourteenth Amendment.

Hence from the stipulated facts and exhibits adduced in the case at bar, it has been demonstrated that the House of Representatives and the Senate of the State of Missouri are malapportioned, in violation of federal constitutional requirements and standards as considered in Baker v. Carr [369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663] and other cited authorities, supra, in that substantial per capita representation is absent in the composition thereof. However, in the interest of equity and justice, it must be ruled that the 1965 General Assembly of that State will have a de facto status to legislatively correct that situation.

Therefore the most that should now be ruled in the case at bar is that during the first regular legislative session of that Assembly, it should promptly devise and pass legislation creating and establishing a system of legislative districting and apportionment of the House of Representatives and the Senate thereof, in accordance with federal constitutional standards as considered in the cited authorities, supra. To permit that to be done, relief as presently sought by plaintiffs and intervenor-plaintiffs will be withheld and stayed, and this Court will refrain from taking present action in the premises of this case until the close of the regular session of the 73rd General Assembly of the State of Missouri, convening in January 1965.

We, therefore, reserve jurisdiction herein for such further orders, judgments and decrees as hereafter will be deemed meet and proper.