Mr. Chief Justice Warren
 

 delivered the opinion of the Court.
 

 This case involves an appeal from a decision of the Maryland Court of Appeals upholding the validity, under the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution, of the apportionment of seats in the Maryland Senate.
 

 I.
 

 Appellants, residents, taxpayers and voters in four populous Maryland counties (Anne Arundel, Baltimore, Montgomery and Prince George’s) and the City of Baltimore, and an unincorporated association, originally brought an action in the Circuit Court of Anne Arundel County, in August 1960, challenging the apportionment of the Maryland Legislature. Defendants below, sued in their representative capacities, were various officials
 
 *791
 
 charged with duties in connection with state elections. Plaintiffs below alleged that the apportionment of both houses of the Maryland Legislature, pursuant to Art. Ill, §§ 2 and 5, of the 1867 Maryland Constitution, as amended, discriminated against inhabitants of the more populous counties and the City of Baltimore by according these persons substantially less representation than that given to persons residing in other areas of the State. They contended that the alleged legislative malappor-tionment violated the Equal Protection Clause of the Fourteenth Amendment since that provision prohibits any State from “denying, diluting or restricting the equality of voting rights or privileges among classes of otherwise eligible voters similarly situated,” and asserted that there was no political remedy practicably available under Maryland law to obtain the relief sought.
 

 Plaintiffs below sought a declaratory judgment that Art. Ill, §§ 2 and 5, of the Maryland Constitution deny them and those similarly situated rights protected under the Equal Protection Clause, and that the failure of the Maryland Legislature to reapportion its membership in accordance with a formula which would reasonably reflect present population figures deprived them of their constitutional rights. Plaintiffs also requested a declaration that the failure of the Maryland General Assembly to convene a constitutional convention as approved by a majority of the State’s voters in the general election of 1950 violated various provisions of the State'Constitution.
 

 Plaintiffs requested that, unless the November 1962 election and elections thereafter were conducted on an at-large basis, the court enjoin defendants from performing various election duties until such time as the General Assembly should submit for a referendum vote by eligible state voters an amendment to Art. HI, §§ 2 and 5, which would reapportion the membership of the Maryland Legislature on a population basis in conformity with the
 
 *792
 
 requirements of the Fourteenth Amendment. Plaintiffs also asked the court to retain jurisdiction of the case until the General Assembly submitted such a constitutional amendment to the State’s voters.
 

 On February 21, 1961, the Circuit Court sustained defendants’ demurrers to plaintiffs’ complaint and dismissed the complaint without leave to amend. On appeal, the Maryland Court of Appeals, on April 25,1962, splitting 5-to-2, reversed the order of the Circuit Court and remanded the case for a hearing on the merits. 228 Md. 412, 180 A. 2d 656. Finding that the federal questions raised were not non justiciable in a Maryland state court, the Maryland Court of Appeals, after discussing this Court’s decision in
 
 Baker
 
 v.
 
 Carr,
 
 369 U. S. 186, stated that
 

 “if any action needs to be taken in order to bring the State’s system of legislative apportionment into conformity with the requirements of the Fourteenth Amendment ... , it is preferable from the point of view of responsible self-government that the State’s own duly constituted officials and the people themselves undertake the task, rather than leave to the Federal judiciary the delicate and perhaps unwelcome task of doing so.”
 
 [1]
 

 While recognizing that “[tjhere was no need in
 
 Baker
 
 v.
 
 Carr
 
 ... for the Supreme Court to pass upon the power of a State court to deal with questions of State legislative apportionment,” the Maryland Court of Appeals found “implicit in the vacation of the judgment and remand by the Supreme Court of the United States to the Supreme Court of Michigan of the case of
 
 Scholle
 
 v.
 
 Hare”
 
 this Court’s view that cases challenging the constitutionality of state legislative apportionments are “appropriate for consideration by a State court . ...”
 
 [2]
 
 Finding “a
 
 *793
 
 strong implication in the
 
 Baker
 
 decision that there must be some reasonable relationship of population, or eligible voters, to representation in the General Assembly, if an apportionment is to escape the label of constitutionally-prohibited invidious discrimination,” the Maryland court nevertheless stated that it was not “possible (or advisable if it were possible) to state a precise, inflexible and intractable formula for constitutional representation in the General Assembly.”
 
 [3]
 
 In remanding to the lower state court to “receive evidence to determine whether or not an invidious discrimination does exist with respect to representation in either or both houses” of the Maryland Legislature, the Court of Appeals stated that, if the Maryland constitutional provisions relating to legislative apportionment were held invalid as to the November 1962 election, the Circuit Court should “also declare that the Legislature has the power, if called into Special Session by the Governor and such action be deemed appropriate by it, to enact a bill reapportioning its membership for purposes” of that election.
 

 On May 24, 1962, the Circuit Court, after receiving various exhibits and hearing argument, held that the apportionment of the Maryland House of Delegates invidiously discriminated against the people of Baltimore, Montgomery and Prince George’s Counties, but not against the people of Baltimore City or Anne Arundel County, and that therefore Art. Ill, § 5, of the Maryland Constitution, which apportions seats in the House of Delegates, violates the Equal Protection Clause of the Fourteenth Amendment. Although stating that the apportionment of the Maryland Senate might be “constitutionally based upon area and geographical location regardless of population or eligible voters,” the Circuit Court refrained from formally passing on the validity of the senatorial apportionment. The lower court also stated
 
 *794
 
 that the Maryland Legislature had the power to enact a statute providing for the reapportionment of the House of Delegates as well as to propose a constitutional amendment providing for such a reapportionment. It withheld the granting of injunctive relief but retained jurisdiction to do so before the November 1962 election if such became appropriate.
 

 On May 31, 1962, the Maryland Legislature, called into special session by the Governor, enacted temporary “stop-gap” legislation reapportioning seats in the House of Delegates, by allocating 19 added seats to the more populous areas of the State.
 
 [4]
 
 However, the legislature failed to pass a proposed constitutional amendment reapportioning the Maryland House. The newly enacted apportionment statute expires automatically on January 1,1966, except that, if a constitutional amendment superseding the statutory provisions is submitted to the voters at the 1964 general election and is rejected, the statute will continue in force until January 1, 1970. The statute further provides that upon its expiration the House of Delegates shall again be apportioned according to Art. Ill, § 5, which the Circuit Court had previously held unconstitutional. No appeal was taken from the Circuit Court’s decision holding invalid the existing apportionment of the Maryland House of Delegates.
 

 Following the Circuit Court’s failure to rule upon the validity of the senatorial apportionment, plaintiffs appealed this question to the Maryland Court of Appeals. On June 8, 1962, the Court of Appeals ordered the case remanded to the Circuit Court for a prompt decision on whether Art. Ill, § 2, of the Maryland Constitution, apportioning seats in the Senate, was valid or invalid under the Equal Protection Clause. On June 28, 1962, the Circuit Court held that the apportionment of the Maryland Senate did not violate the Federal Constitu
 
 *795
 
 tion because it felt that an apportionment based upon area and geographical location, without regard to population, served to protect minorities, preserve legislative checks and balances, and prevent hasty, though temporarily popular, legislation, and accorded with history, tradition and reason, placing considerable reliance on a comparison of that body of the Maryland Legislature with the Federal Senate.
 

 On July 23, 1962, the Maryland Court of Appeals, splitting 5-to-3, in a
 
 per curiam
 
 order- affirmed the Circuit Court’s decision holding valid the apportionment of the Maryland Senate, noting that its reasons would be stated in an opinion to be filed at a later date. Plaintiffs’ motion for reargument, calling attention to recent decisions and developments relating tó legislative apportionment, was denied by the Maryland Court of Appeals on September 11, 1962. On September 25, 1962, the Court of Appeals filed its opinion. 229 Md. 406, 184 A. 2d 715. It stated initially that the appeal did not question the apportionment of the Maryland House. Continuing, the Maryland court indicated that it was affirming the decision below and upholding the constitutionality of the senatorial apportionment, on the grounds that: (1) Each Maryland county has since 1837 had the same number of Senate seats, except that Baltimore City had periodically been given additional representation, and Maryland counties "have always been an integral part of the state government” and have consistently possessed and maintained “distinct individualities”; (2) since the idea of a bicameral legislature assumes two different methods of apportionment in the two Houses to check “hasty and ill-conceived legislation,” one house can be constitutionally apportioned on a nonpopulation, geographical basis; and (3) geographical representation in the Maryland Senate, based on political subdivisions, is closely analogous to the representation of the States in the Federal Senate. The dissenting judges pointed out that the House of Dele
 
 *796
 
 gates, even as reapportioned, was still not apportioned on a population basis, and that gross disparities from population-based representation existed in the senatorial apportionment. The dissenters found that neither history nor reliance on the so-called federal analogy provided a rational basis for such gross disparities from population-based representation as were found in the apportionment of the Maryland Legislature, before and after the 1962 reapportionment. Since the Maryland Court of Appeals upheld the senatorial apportionment plan, the November 1962 election of senators was conducted pursuant thereto, and delegates were elected under the scheme provided by the 1962 legislation. Notice of appeal to this Court from the Maryland Court of Appeals’ decision was timely filed, and we noted probable jurisdiction on June 10, 1963. 374 U. S. 804.
 

 II.
 

 The Maryland Constitution of 1867 vests legislative power in a bicameral General Assembly consisting of a Senate and a House of Delegates. According to official census figures, Maryland had a 1960 population of 3,100,689, and the combined population of the five most-populous political subdivisions of Maryland — the counties of Anne Arundel, Baltimore, Montgomery and Prince George’s, and the City of Baltimore — was 2,336,409. Thus, about 75.3% of the State’s total population lived in these five most populous subdivisions, as of 1960, while about 24.7% lived in the remaining 19 counties of the State. Under Art. Ill, § 2, of the Maryland Constitution, each of the State’s 23 counties is allocated one seat in the Maryland Senate, and each of the six legislative districts of the City of Baltimore is also entitled to one Senate seat — resulting in a total of 29 seats in the Maryland Senate. Thus, the five most populous political subdivisions, with over three-fourths of the State’s total 1960 population, are represented by only 10 senators, or slightly
 
 *797
 
 over one-third of the membership of that body. On the other hand, the remaining 19 counties, with an aggregate population of less than one-fourth of the State’s population, are nevertheless represented by 19 senators, almost two-thirds of the members of that body.
 
 [5]
 
 And the 15 least populous counties, with only 14.1% of the total state population, can elect a controlling majority of the members of the Maryland Senate. A maximum population-variance ratio of almost 32-to-l exists between the most populous and least populous counties. Kent County, with a 1960 population of 15,481, and Calvert County, where only 15,826 resided, are each entitled to one Senate seat, while Baltimore County, with a 1960 population of 492,428, is likewise entitled to only one senator.
 

 As to the apportionment of the Maryland House of Delegates, Art. Ill, § 5, of the Maryland Constitution, in force when this litigation was commenced but subsequently held unconstitutional by the Maryland courts and superseded by the temporary legislation enacted in 1962, prescribed the representation accorded to each of the State’s political subdivisions in the Maryland House. The membership of the House was numerically fixed at 123 by this constitutional provision, with each county being given at least two House seats. Seven counties were given two seats each, five counties were allocated three seats, and four counties were given four House members. The remaining seven counties, including all of those four populous counties where appellants reside, were each allotted six House seats, and the six legislative districts of the City of Baltimore were given six delegates
 
 *798
 
 each.
 
 [6]
 
 Under the then-existing House apportionment, the five most populous political subdivisions, with 75.3% of the State’s 1960 population, elected only 60 delegates, or less than one-half of the members of the House of Delegates, while the other 19 counties, with only 24.7% of the population, were represented by 63 delegates, or 51.3% of the total membership. A maximum population-variance ratio of over 12-to-l existed between the most populous and least populous counties. Baltimore County, with a 1960 population of 492,428, had only the same number of House seats, six, as did Garrett and Somerset Counties, whose combined 1960 population was 40,043.
 

 Under the 1962 temporary legislation reapportioning the Maryland House of Delegates, the only practical effect is to add 19 House seats, increasing the membership of that body from 123 to 142, for the four.-year terms of delegates elected in November 1962. Seven seats were added for Baltimore County, four delegates each were added for Montgomery and Prince George’s Counties, two of Baltimore City’s legislative districts were given two and one additional seats, respectively, and one seat was
 
 *799
 
 added for Anné Arundel County. The basic scheme embodied in the temporary legislation is to allocate two House seats to each county and to each of the six Baltimore City legislative districts, and then to distribute the remaining seats, out of a fixed number of 123, among the counties on a population basis. The new law provided, however, that during the initial four-year period of its operation, “and for any additional period during which . . . [it] may be extended,” each county and legislative district would be entitled, as a minimum, to the number of House seats that it had on January 1, 1962. Thus, this means that in actuality there will be more than 123 delegates and that the counties and legislative districts which were allegedly overrepresented under the old constitutional provisions will retain much of their former relative power. Under the new legislation, the five most populous subdivisions, with 75.3% of the State’s 1960 population, elect 79 delegates, or 55.6% of the members in the Maryland House. The remaining 19 counties, with less than one-fourth of the State’s population, elect 44.4% of the members of the House of Delegates. Counties with only 35.6% of the State’s total population elect a majority of the members of the House under the 1962 legislation. A maximum population-variance ratio of almost 6-to-l still exists between the most populous and least populous House districts. A delegate from Somerset County represents an average of 6,541 persons, whereas a delegate from Baltimore County represents an average of 37,879. Under both the previous and present apportionment provisions, members of both the Senate and the House of Delegates in Maryland are all elected to serve four-year terms.
 
 [7]
 
 None of the Maryland counties, under either the old or revised House apportionment schemes, were divided into districts for the purpose
 
 *800
 
 of electing delegates. Rather, all House members are elected at large within each county (and legislative district), regardless of the number of seats allocated thereto.
 
 [8]
 

 Maryland law makes no provision for the initiation of legislation or constitutional amendments by the people.
 
 [9]
 
 Certain constitutional provisions provide, however, for the taking, at a general election each 20 years, of “the sense of the People in regard to calling a Convention for altering this Constitution.”
 

 [10]
 

 Pursuant to these provisions, a statewide referendum on whether a constitutional convention, which would have the power to propose amendments to the Maryland Constitution, including amendments relating to the reapportionment of representation in the General Assembly, should be called was submitted to the State’s voters at the general election in 1950. An overwhelming majority of the voters (by a vote of 200,439 to 56,998) indicated their approval of the calling of a constitutional convention. Nevertheless, even though numerous bills providing for the convening of a constitutional convention were introduced into the
 
 *801
 
 General Assembly between 1951 and 1962, the General Assembly repeatedly refused to enact the necessary enabling legislation.
 
 [11]
 
 Thus, despite the favorable vote of the State’s electorate, no constitutional convention has ever been convened. The next such vote will not be taken until 1970, and, even if the people again approve the calling of a constitutional convention, it cannot be actually convened without the enactment of enabling legislation by the Maryland General Assembly.
 

 Although over 10 reapportionment bills were introduced into the General Assembly between 1951 and 1960, all failed to pass because of opposition by legislators from the less populous counties. Both houses of the General Assembly, during its 1960 regular session, declined to pass bills incorporating the limited reapportionment recommendations of a special commission created by the Governor in 1959 to investigate and report on the matter of legislative reapportionment. Numerous proposed reapportionment amendments and reapportionment bills were introduced at the regular session of the Maryland Legislature in 1961 and 1962, but all failed of passage. Relief from the allegedly discriminatory apportionment through constitutional amendment was also apparently unavailable, as a practical matter, to appellants. Article XIV, § 1, of the Maryland Constitution requires a three-fifths affirmative vote of the membership of both houses of the General Assembly in order to have proposed constitutional amendments submitted to the State’s voters at a referendum. Admittedly, legislators from the less
 
 *802
 
 populous counties controlled each house of the Maryland Legislature. And even if a constitutional convention were convened, representation at the convention would be based on the allocation of seats in the allegedly malapportioned General Assembly.
 
 [12]
 
 Significantly, the Maryland Court of Appeals, in its initial opinion in this litigation, stated that “the chances of the appellants’ obtaining relief from the infringement upon their alleged constitutional rights, other than from the courts, is so remote as to be practically nil.”
 
 [13]
 

 Neither in the Maryland Constitution nor in the state statutes is there any provision relating to the reapportionment of representation in the General Assembly. Apart from the limited and temporary reapportionment of the House enacted at the 1962 special session of the Maryland Legislature, following the holding of the Circuit Court that the House apportionment provisions of the Maryland Constitution were invalid, all efforts since 1867 to achieve a substantial reapportionment of seats in the General Assembly, with two rather minor exceptions, have been futile.
 
 [14]
 
 In 1900, the City of Baltimore, because of its expanding population, was given an additional Senate seat and an additional legislative district, bringing its total to four senators and legislative districts.
 
 *803
 
 Two additional senators and two more legislative districts were added to Baltimore City’s representation in 1922. Apart from these increases in the legislative representation of the City of Baltimore, membership in the Maryland Senate remains as provided for in the 1867 Constitution. And, until 19 additional House seats were created and distributed among the five most populous political subdivisions in 1962, representation in the House of Delegates had been based, for a period of 95 years, on the limited-population formula embodied in the 1867 Maryland Constitution.
 
 [15]
 

 III.
 

 In its unreported opinion holding the Maryland senatorial apportionment valid, the Circuit Court, after referring to the reapportionment of seats in the House of Delegates by the Maryland Legislature, stated: “It appears, therefore, and the Petitioners have conceded, that the Lower House has been legally reapportioned according to population.” And the Maryland Court of Appeals, in its opinion upholding the Circuit Court’s decision that the senatorial apportionment was constitutionally valid, pointed out that the instant appeal was from the lower court’s decision on remand of the previously undecided question as to the validity of the senatorial apportionment, and stated: “No question is presented as to the validity of the ‘stop-gap’ legislation or the reapportionment of the House of Delegates.”
 
 [16]
 
 Questioning the validity of the majority’s assumption in this regard, the dissenters stated:
 

 “The majority of this Court in the present case seems to accept tacitly, if not expressly, the view
 
 *804
 
 that if one house of the Maryland General Assembly (the Senate) may be apportioned on a basis which ignores disparities of population, the other house (the House of Delegates) must be apportioned with due regard to population, and assumes that the House of Delegates now is so apportioned. It is true that the apportionment of the House is not under attack on this appeal and no question with regard thereto is now before us. It is also true, however, that even as reapportioned by the May 1962 Special Session of the General Assembly, considerable disparities still exist in a number of instances, though previous disparities have been materially reduced. . . . There is no such close relationship between population and representation as in the case of the Michigan House .... Surely, the present Maryland apportionment is not so closely related to population as is that of the House of Representatives of the Congress of the United States. In that respect the Federal analogy is far from perfect.”
 
 [17]
 

 Appellants have continually asserted that not only is the constitutional validity of the apportionment of the Maryland Senate at issue in this appeal, but that also presented for decision is the sufficiency, under the Fourteenth Amendment to the Federal Constitution, of “the combined total representation provided for in both Houses of the Maryland General Assembly.” Appellees, on the other hand, have repeatedly contended that the sole question presented in this appeal is whether one house of a bicameral state legislature,
 
 i. e.,
 
 the Maryland Senate, can be apportioned on a basis other than population, where the other house is presumably apportioned on a strict population basis. Appellees have argued that,
 
 *805
 
 since the courts below assumed and appellants allegedly conceded that the Maryland House of Delegates, as reapportioned in 1962, is apportioned on a population basis, and since the decisions of the state courts below here appealed from considered only the validity of the apportionment of the Maryland Senate, this Court is precluded from considering the validity of the apportionment of the Maryland House and is required to assume that that body is now apportioned on a population basis.
 

 Regardless of possible concessions made by the parties and the scope of the consideration of the courts below, in reviewing a state legislative apportionment case this Court must of necessity consider the challenged scheme as a whole in determining whether the particular State’s apportionment plan, in its entirety, meets federal constitutional requisites. It is simply impossible to decide upon the validity of the apportionment of one house of a bicameral legislature in the abstract, without also evaluating the actual scheme of representation employed with respect to the other house. Rather, the proper, and indeed indispensable, subject for judicial focus in a legislative apportionment controversy is the overall representation accorded to the State’s voters, in both houses of a bicameral state legislature. We therefore reject appellees’ contention that the Court is precluded from considering the validity of the apportionment of the Maryland House of Delegates. We cannot be compelled to assume that the Maryland House is presently apportioned on a population basis, when that is in fact plainly not so. Furthermore, whether or not the House is apportioned on a population basis, the scheme of legislative representation in Maryland cannot be sustained under the Equal Protection Clause of the Federal Constitution, because of the gross disparities from population-based representation in the apportionment of seats in the Maryland Senate.
 

 
 *806
 
 IV.
 

 In
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 p. 533, decided also this date, we held that seats in both houses of a bicameral state legislature are required, under the Equal Protection Clause, to be apportioned substantially on a population basis. Neither house of the Maryland Legislature, even after the 1962 legislation reapportioning the House of Delegates, is apportioned sufficiently on a population basis to be constitutionally sustainable. Thus, we conclude that the Maryland Court of Appeals erred in holding the Maryland legislative apportionment valid, and that the decision below must be reversed.
 

 We applaud the willingness of state courts tó assume jurisdiction and render decision in cases involving challenges to state legislative apportionment schemes.
 
 [18]
 
 However, in determining the validity of a State’s apportionment plan, the same federal constitutional standards are applicable whether the matter is litigated in a federal or a state court. Maryland’s plan is plainly insufficient under the requirements of the Equal Protection Clause as spelled out in our opinion in
 
 Reynolds.
 

 [19]
 

 
 *807
 
 For the reasons stated in
 
 Reynolds,
 

 [20]
 

 appellees' reliance on the so-called federal analogy as a sustaining principle for the Maryland apportionment scheme, despite significant deviations from population-based representation in both houses of the General Assembly, is clearly misplaced.
 
 [21]
 
 And considerations of history and tradition, relied upon by appellees, do not, and could not, provide a sufficient justification for the substantial deviations from population-based representation in both houses of the Maryland Legislature.
 

 In view of the circumstances of this case, we feel it inappropriate to discuss remedial questions at the present time.
 
 [22]
 
 Since all members of both houses of the Maryland General Assembly were elected in 1962, and since all Maryland legislators are elected to serve four-year terms, the next election of legislators in Maryland will not be conducted until 1966. Thus, sufficient time exists for the Maryland Legislature to enact legislation reapportioning seats in the General Assembly prior to the 1966 primary and general elections. With the Maryland constitutional provisions relating to legislative apportionment hereby held unconstitutional, the Maryland Legislature presumably has the inherent power to enact at least temporary reapportionment legislation pending adoption of state constitutional provisions relating to
 
 *808
 
 legislative apportionment which comport with federal constitutional requirements.
 
 [23]
 

 Since primary responsibility for legislative apportionment rests with the legislature itself, and since adequate time exists in which the Maryland General Assembly can act, the Maryland courts need feel obliged to take further affirmative action only if the legislature fails to enact a constitutionally valid state legislative apportionment scheme in a timely fashion after being afforded a further opportunity by the courts to do so. However, under no circumstances should the 1966 election of members of the Maryland Legislature be permitted to be conducted pursuant to the existing or any other unconstitutional plan. We therefore reverse the judgment of the Maryland Court of Appeals, and remand the case to that Court for further proceedings not inconsistent with the views stated here and in our opinion in
 
 Reynolds
 
 v.
 
 Sims.
 

 It is so ordered.
 

 Mr. Justice Clark concurs in the reversal for the reasons stated in his concurring opinion in
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 p. 687, decided this date.
 

 [For dissenting opinion of Mr. Justice Harlan, see
 
 ante,
 
 p. 589.]
 

 Mr. Justice Stewart.
 

 In this case there is no finding by this Court or by the Maryland Court of Appeals that Maryland’s apportion
 
 *809
 
 ment plan reflects “no policy, but simply arbitrary and capricious action or inaction.” Nor do I think such a finding on the record before us would be warranted. Consequently, on the basis of the constitutional views expressed in my dissenting opinion in
 
 Lucas
 
 v.
 
 Forty-Fourth General Assembly of Colorado, post,
 
 p. 744. I would affirm the judgment of the Maryland Court of Appeals unless the Maryland apportionment “could be shown systematically to prevent ultimate effective majority rule.” The Maryland court did not address itself to this question. Accordingly, I would vacate the judgment and remand this case to the state court for full consideration of this issue.
 

 [2]
 

 Id.,
 
 at 428, 180 A. 2d, at 664.
 

 [3]
 

 Id.,
 
 at 433-434, 180 A. 2d, at 667-668.
 

 [4]
 

 Md. Ann. Code (1962 Supp.), Art. 40, §42.
 

 [5]
 

 Included as Appendix B to the dissenting opinion of the Maryland Court of Appeals is a chart comparing the senatorial representation of the City of Baltimore and the four most populous counties with that of the other counties in the State. 229 Md., at 430, 184 A. 2d, at 730.
 

 [6]
 

 Article III, § 4, of the 1867 Maryland Constitution provided for a minimum of two delegates per county, with increases proportional to population up to a total of six when a county’s population reached 55,000, but made no provision for additional delegates after a county’s population reached and exceeded 55,000. In 1950, Art. Ill, § 5, was adopted as a constitutional amendment freezing the representation in the House of Delegates on the basis of the allocation of House seats under the 1940 federal census. The purpose of this amendment was to prevent the smaller counties from continuing to receive increased House representation at the expense of the larger political subdivisions which, under the 1867 formula, were not entitled to any more than six delegates after their population had reached 55,000, regardless of how much it might increase thereafter. Additionally, Art. Ill, § 4, of the Maryland Constitution, as amended, provides for altering the boundaries of the legislative districts of the City of Baltimore to provide for approximately equal population among the six districts.
 

 [7]
 

 According to the provisions of Art. Ill, §§ 2, 6, and 7, of the Maryland Constitution.
 

 [8]
 

 Appendix A to the dissenting opinion of the Maryland Court of Appeals contains a chart showing the populations, according to 1960 census figures, and representation of Maryland’s 23 counties and the City of Baltimore in the two houses of the Maryland General Assembly, including figures relating to the apportionment of seats in the House of Delegates both before and after the 1962 reapportionment legislation. Also included in this chart are figures showing the number of persons represented by each delegate, and computations of the relative values of votes for delegates and senators in each of the State’s political subdivisions. 229 Md., at 429, 184 A. 2d, at 728-729.
 

 [9]
 

 Article XYI, §§2-5, of the Maryland Constitution provides a procedure for the conducting of a referendum vote by the people on certain types of legislative enactments, however, upon the filing of a petition signed by at least 3% of the State’s qualified voters.
 

 For a discussion of the lack of federal constitutional significance of the presence or absence of an available political remedy, see
 
 Lucas
 
 v.
 
 Forty-Fourth General Assembly of
 
 Colorado,
 
 post,
 
 pp. 736-737, decided also thjis date.
 

 [10]
 

 Md. Const., Art. XIV, § 2.
 

 [11]
 

 Despite the clear mandate of Art. XIV, § 2, of the State Constitution, which states that “if a majority of voters at such election or elections shall vote for a Convention, the General Assembly, at its next session, shall provide by Law for the assembling of such convention, and for the election of Delegates thereto.”
 

 Compare the situation existing in Colorado, with respect to the availability of a political remedy, as discussed in our opinion in
 
 Lucas, post,
 
 pp. 732-733.
 

 [12]
 

 Pursuant to Art. XIV, § 2, of the Maryland Constitution, which provides: “Each County, and Legislative District of the City of Baltimore, shall have in such Convention a number of Delegates equal to its representation in both Houses at the time at which the Convention is called.”
 

 [13]
 

 228 Md., at 432-433, 180 A. 2d, at 667.
 

 [14]
 

 In fact, there has been no substantial change in the scheme of legislative representation in Maryland since 1837, when the system of indirect election of senators was abolished. In 1864 the City of Baltimore was given additional representation in the form of three legislative districts, with one senator for each of the three districts. A constitutional convention in 1867, which adopted the existing Maryland Constitution, confirmed the increased representation accorded the City of Baltimore, but otherwise based the legislative apportionment provisions which it adopted on the 1837 scheme.
 

 [15]
 

 For a discussion of various aspects of the Maryland legislative apportionment situation, including the instant litigation, see Note, Senate Reapportionment — The Maryland Experience, 31 Geo. Wash. L. Rev. 812 (1963).
 

 [16]
 

 229 Md., at 410, 184 A. 2d, at 716.
 

 [17]
 

 Id.,
 
 at 421-422, 184 A. 2d, at 723-724.
 

 [18]
 

 A commendable example of an exercise of judicial responsibility by a state court in a case involving state legislative apportionment is provided by the action of the Kansas Supreme Court in
 
 Harris
 
 v.
 
 Shanahan,
 
 192 Kan. 183, 387 P. 2d 771 (1963). In that case the Kansas Supreme Court held that the statutory provisions apportioning seats in both houses of the Kansas Legislature were constitutionally invalid, but afforded the legislature a further opportunity to enact a constitutionally valid plan prior to the 1964 primary and general elections. Of course, this decision by the Kansas Supreme Court is not presently before us, and we indicate no view as to the merits in that case.
 

 [19]
 

 The pattern of prolonged legislative inaction with respect to legislative apportionment matters and the existence of a rural strangle hold on the legislature in Maryland closely parallels the situation existing in Alabama, although Maryland, unlike Alabama,
 
 *807
 
 has no state constitutional provision requiring decennial legislative reapportionment.
 

 [20]
 

 See
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 pp. 571-576.
 

 [21]
 

 Additionally, the Maryland legislative apportionment scheme here attacked fails to resemble the plan of representation in the Federal Congress in at least two important respects: the Maryland House, even as reapportioned in 1962, is clearly not apportioned on a population basis, and political subdivisions are not accorded the same number of senatorial seats, since, although each of Maryland’s. 23 counties is given only one Senate seat, six senators are allotted to the City of Baltimore.
 

 [22]
 

 See
 
 Reynolds
 
 v.
 
 Sims, ante,
 
 p. 585.
 

 [23]
 

 See 228 Md., at 438-440,180 A. 2d, at 670-671, where the Maryland Court of Appeals stated that, if the Maryland constitutional provisions relating to legislative apportionment were found invalid by the lower court, the Maryland Legislature would have the power to enact reapportionment legislation, “because the powers of the General Assembly of Maryland are plenary, except as limited by constitutional provisions.” See also the reference to this matter earlier in this opinion,
 
 ante,
 
 at 661.