W. L. WOODARD and M. B. Morey, on Behalf of themselves severally and jointly and all others similarly situated, Plaintiffs,

v.

CARTERET COUNTY, NORTH CARO-LINA et al., Defendants.

Civ. No. 662.

United States District Court
E. D. North Carolina,
New Bern Division.

March 9, 1966.

Wheatly & Bennett, Beaufort, N. C., for plaintiffs.

Hamilton, Hamilton & Phillips, Morehead City, N. C., for defendants Carteret County, N. C., Board of County Commissioners of Carteret County, and Board of Elections of Carteret County.

Thomas Wade Bruton, Atty. Gen. of North Carolina, Raleigh, N. C., for defendants Chairman of N. C. Board of Elections and Attorney General of State of North Carolina.

LARKINS, District Judge.

This cause comes before the Court as a civil action arising under the Fourteenth Amendment to the Constitution of the United States; Title 42 U.S.C.A. §§ 1983 and 1988 of the Civil Rights Act; and Title 28 U.S.C.A. § 1343, providing for civil rights and the elective franchise. Relief is sought pursuant to the Declaratory Judgment Act, Title 28 U.S.C.A. §§ 2201 and 2202.

Plaintiffs, allegedly representing a class, specifically complain of the method and process of nominating candidates by primary elections for the offices of the County Commissioners of Carteret County, North Carolina. These primary elections were conducted according to the provisions of Chapter 1043, Session Laws of the North Carolina General Assembly, for the year 1963. The present Board of Commissioners now hold office

pursuant to elections as provided for in these statutes and an extension of their terms for an additional two years resulting from amendments to the above statute passed in 1965.

Plaintiffs, as citizens and voters of the County, insist that the system used, by which political districts for conducting primary elections of the County Commissioners, was not mathematically proportioned in accordance with the standards required by the "one man, one vote" dictate of the Federal Constitution. They further contend that the extension of these allegedly improperly elected Commissioners must also be unconstitutional.

At this juncture in the proceedings, motions for summary judgment have been made, and motions for dismissals have also been made by various parties. Plaintiffs have amended their complaint, to which the defendants have made answer. Defendants have also filed an amended answer to the amended complaint. The contents of this amended answer indicates that there has been a redistricting of the primary election districts to an almost perfect "one man, one vote" ratio by districts. (It is to be noted that once the primary elections have been held, all candidates so selected must then run in the general election on an at-large basis.) Be that as it may, those elected for a two-year term in the general election of November 1964, are now to continue in office beyond their original two-year period for which they were elected. Unless relief is granted, those presently in office and nominated according to the primary electoral districts established prior to the primary elections of 1964, shall remain in office beyond their originally elected terms of two years. This is so in spite of the fact that the primary electoral districts have been altered to more fully comply with the dictates of the constitutional requirements of "one man, one vote."

A three-judge court was convened as prayed for in the Complaint; however, it was later dissolved. The Attorney General and the Chairman of the State Board of Elections have been dismissed upon motion.

## CONCLUSIONS OF LAW

 It would seem that a one-judge court of the federal district courts system might examine the proportion of actual representation by districts of local governments. Ellis v. Baltimore, 352 F.2d 123 (4th Cir., 1965). This Court may, therefore, examine the ratio of voters or citizens contained in each district involved and actually represented on the Board of Commissioners by districts. *Ellis,* supra.

But certain unique questions are also presented in this action which make the case distinguishable from the *Ellis* case.

(1) Do the requirements of "one man, one vote" as stated in the 377th Volume of the United States Reports (1964) apply to the situation where electoral districts are established by the State legislature for purposes of conducting primary elections only?

(2) If the primary electoral districts now conform to the general standards of voter equality enunciated in the above-stated Report, must this Court intercede and direct that elections of County Commissioners be held in spite of their extension of terms in office, without the question of the legality of their extension being first presented to the State Courts?

 In deciding what approach to take in these questions, the Court is convinced that the constitutional standards under the "equal protection clause" of the Fourteenth Amendment, and enunciated in the above-referred to Report, are as binding on the State Courts as they are on this Court. See Maryland Committee v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964). See also these cases in the 377th Volume of the United States Reports; Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); W. M. C. A. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568 (1964); Maryland Committee v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595 (1964); Davis v. Mann, 377 U.S.

678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620 (1964); and Lucas v. Colorado General Assembly, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632 (1964); and also, Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962).

It is to be noted that, as stated by plaintiffs' counsel in oral argument before this Court, a unique question for the State of North Carolina is presented herein. It can be said that this does not appear to be a matter falling within those principles of law stated by the Supreme Court of the State of North Carolina in Penny v. Salmon, 217 N.C. 276, 7 S.E.2d 559 (1940). The question might be stated as follows: whether those elected according to standards of population apportionment which might be violative of the equal protection clause of the Constitution of the United States, may continue in office by virtue of an extension of their terms, said extensions being in conformity with State constitutional standards.

■ To resolve this question, the Federal Court may be assuming a power to decide a complex and unsettled question of local law. It is true that Federal Constitutional standards are involved, but this is frequently the case in many State actions. It would seem that this Court, in recognizing the principle of comity, and in the exercise of its discretion, should abstain from passing on this matter at this time. It should await the passing on of the questions raised by this action until the State has had an opportunity to pass on them. See Baggett v. Bullitt, 377 U.S. 360, 375, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964). It is clear·that a determination of these questions by the State in a State forum may very well avoid the raising of the constitutional issues plaintiffs present to this Court by bringing it in the Federal forum. See Fox v. State of Washington, 236 U.S. 273, 35 S.Ct. 383, 59 L.Ed. 573 (1915); and Poulos v. State of New Hampshire, 345 U.S. 395, 409, 73 S.Ct. 760, 97 L.Ed. 1105 (1953).

## ORDER

Therefore, it is ordered that this cause be, and the same is hereby directed to be placed before the Superior Court of Carteret County, North Carolina, for a determination in accordance with the "equal protection" clause of the Fourteenth Amendment to the Constitution of the United States.

It is further ordered that this Court shall retain jurisdiction, holding further disposition of the action in abeyance until such time as a final Order can be entered in the State Court System.

It is further ordered that this Court shall take such other action as will be, from time to time, required in the interest of justice, and upon the motion of either party or upon motion by the Court.