**R. M. LONG et al., Plaintiffs,**

v.

**Robert B. DOCKING, Governor et al., Defendants.**

**Civ. A. No. W–3220.**

United States District Court
D. Kansas.

March 28, 1968.

Ralph E. Gilchrist, Wichita, Kan., Thomas M. Van Cleave, Jr., Kansas City, Kan., for plaintiffs.

Robert C. Londerholm, Atty. Gen., State of Kansas, Richard J. Foth, Asst. Atty. Gen., State of Kansas, Topeka, Kan., for defendants.

Before HILL, Circuit Judge, and BROWN and TEMPLAR, District Judges.

## PER CURIAM OPINION AND DECREE

PER CURIAM.

This matter has been before the Court since 1965, when, in the decision filed and reported, 251 F.Supp. 541, the Court held invalid Chapter 1, Laws of Kansas, Special Session of 1964, because there existed greater inequality of apportionment in the Kansas State Senate than was constitutionally permissible under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

Injunctive relief was withheld when the Court considered the proximity of forthcoming elections at which a constitutionally elected House of Representatives would be created and which could consider and enact a constitutionally acceptable Senatorial Apportionment Statute. The Court, by a supplemental order entered February 23, 1966, retained jurisdiction of the case and further directed that in the event a valid reapportionment plan for the State Senate had not been adopted by the Kansas Legislature prior to April 1, 1968, it would enter such orders as it deems appropriate, including, if necessary, an order for a valid reapportionment plan. 251 F.Supp. 551, 559.

Thereafter, the Kansas Legislature, in its Session of 1968, enacted Senate Bill 495, purporting to constitutionally apportion the Kansas Senate in the light of the guidelines set forth in the decisions referred to above as developed in conformity with the applicable declarations of the United States Supreme Court. The plaintiffs and defendants presented to the Court a joint motion requesting the Court to review and determine the validity of Senate Bill 495. This, the Court did, and on February 23, 1968, filed its decision determining that since it appeared from the record that the integrity of political subdivisions was substantially disregarded and since there was no other legitimate consideration to justify a ratio between the largest and the smallest district, the Court was compelled to hold

that the apportionment proposed failed to satisfy the "nearly equal as practicable rule," and that Senate Bill 495 was, therefore, constitutionally invalid, 282 F.Supp. 256. The Court then directed that its decision entered December 28, 1965, and supplemented by its order entered February 28, 1966, should remain in full force and effect, and the Court retained jurisdiction of the case for purposes set forth in those orders and decisions.

Following the decision of February 23, 1968, there was enacted by the Kansas Legislature at its Session of 1968, Senate Bill 716. The Governor did not sign the bill but permitted it to become effective without his signature. The legislative session was near an end and the parties agreed to present the matter to the Court for the Court's consideration promptly upon its becoming a law without the approval of the Governor. The defendants filed a motion to dismiss the action on the grounds that Senate Bill 716 comports with the Constitution of the United States and of Kansas, and the proceeding is, therefore, moot.

The Court then conducted an evidentiary hearing on March 8 and 9, 1968. At this hearing there was introduced for the Court's consideration a copy of Senate Bill 716, a map showing the districts created on a map of Kansas with county lines superimposed thereon, minutes of the meetings of legislative committees to which the bill had been assigned and considered; maps of Wyandotte County, Johnson County, the City of Topeka, and a map showing an apportionment proposed by an amendment to Senate Bill 716 which was rejected by the Legislature. Copies of the Journal of the House of Representatives for March 1, 1968, and March 2, 1968, were received, as were maps offered which were designed to demonstrate that an apportionment could be established having greater equality and at the same time violating the integrity of fewer political subdivisions of the State.

Oral testimony of the Chairman of the Senate Committee on Legislative Apportionment was offered, as was testimony of other members of the Legislature. Each witness offered by defendants sought to explain and justify the establishment of the districts created in which county lines were crossed, some counties bisected, and the establishment of a rather unusually shaped district in Shawnee County, having the appearance on the map of a "horseshoe." The creation of this peculiar district provided for the splitting of two precincts.

The plaintiffs offered in rebuttal oral testimony of a House member from Shawnee County, and maps suggesting several alternative apportionment plans which would provide for establishment of Senatorial districts with no greater deviations in population and with more compact districts with county lines crossed in fewer instances.

Senate Bill 716 divides the State into 40 senatorial districts. Under its provisions seven counties are in some manner divided and the integrity of political subdivisions are to that extent violated. The largest district has a population of 60,809, which is 8.7% above the media of *55,919*, and the smallest district has a population of 52,136, or 6.8% below the media, a spread of 16.6%.

We need not repeat what we have said in our earlier rulings in this case. It is enough to observe that Section 41 of Senate Bill 716 declares it to be the purpose and intent of the Legislature to establish Senatorial districts which are as equal in population as practicable, and that such districts have been created (by Senate Bill 716) in accordance with the principle that the counties of the State constituting the primary political subdivisions of the State are entitled to independent representation in the government of the state, and that only in those instances where the adherence to this principle would subvert the standard of substantial equality of population has integrity of county lines been disregarded.

We recognize that reapportionment is primarily a matter for legislative

consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so. Reynolds v. Sims, 377 U.S. 533, 586, 84 S.Ct. 1362, 12 L.Ed.2d 506. We are also aware of the concept that districts should be constructed as nearly of equal population as is practicable, though mathematical exactness or precision is hardly a workable constitutional requirement and so long as the divergencies from a strict population standard are based on legitimate consideration, incident to effectuation of a rational state policy, some deviations from the equal-population principle are constitutionally permissible. Furthermore, neither history alone nor other sorts of group interests are permissible factors in attempting to justify disparities from population-based representation, for citizens, not history or economic interests, cast votes.

A state may rationally consider, according to political subdivisions, some independent representation in at least one body of the State Legislature, as long as the basic standard of equality of population among districts is maintained and provides for compact districts of contiguous territory, and as long as population is not submerged as the controlling principle in the apportionment of seats in a particular legislative body. Reynolds v. Sims, 377 U.S. 533, 579, 84 S.Ct. 1362, 12 L.Ed.2d 506; Harris v. Anderson, 196 Kan. 449, 412 P.2d 457. In this connection, we take judicial notice of the apportionment of the Kansas House of Representatives, sustained by the Kansas Supreme Court, in which ninety-seven (97) districts out of one hundred twenty-five (125) varied no more than 6%, all except two varied less than 9%, and the smallest and the largest varied only 11%. We believe, as did the Kansas Supreme Court and for the reasons advanced by it, that the scheme of representation for the Kansas House clearly followed an apportionment on a population basis, with observance of the integrity of county boundary lines which were abandoned only when required by overriding limitations of both state and federal constitutions of maintaining the basic standards of equal populated areas.

We mention the apportionment of the Kansas House for the reason that under Maryland v. Tawes, 377 U.S. 656, 673, 84 S.Ct. 1429, 12 L.Ed.2d 595, it is not possible to decide upon the validity of the apportionment of one house of a bicameral legislature in the state, without also evaluating the actual scheme of representation employed with respect to the other house. The indispensable subject of judicial focus in a legislative apportionment controversy is the over-all representation accorded to the state's voters in both houses of a bicameral state legislature. This, we have done, and conclude that the Kansas House is substantially apportioned, within the guidelines set forth by us, on a population basis.

A careful examination of the record and the evidence before us in this case demonstrates that the legislative consideration of the guidelines declared by the United States Supreme Court, and stated by this Court in its earlier opinions, were not followed.

One need only to examine the map (Ex. "A") offered by defendants to see that in several instances compact districts of contiguous territory were not created. This is most startlingly illustrated by District Seventeen in Shawnee County. Nor, does the defendants' evidence reveal that the factors of integrity of political subdivisions and the maintenance of compactness and contiguity in forming senatorial districts were adhered to. The dissection of Barton County, the consolidation of portions of Johnson County, an area with a rapidly expanding population with segments of Wyandotte County, fails measurably to recognize the fact that by preserving the integrity of Johnson County, with a 1967 population of 202,847, four districts could be jus-

tifiably created in that rapidly growing county.

 When all of these instances are considered and the disparity of population between the districts under Senate Bill 716 is taken into account, we must hold that the respondents have not sustained the burden of proof, as they must, for they failed to articulate acceptable reasons for the variances between the districts when such variations are not based upon legitimate considerations incident to the effectuation of a rational state policy. Swann v. Adams, 385 U.S. 440, 87 S.Ct. 569, 17 L.Ed.2d 501.

The evidence before us reveals that plans were offered to the Legislature which would have established districts with no greater population differences, with more compact districts, and with much fewer crossing of county lines. The evidence before us leads to the conclusion that a majority of the members of the Legislature, and more particularly the members of the State Senate, were motivated by other considerations than the constitutional objective of "practical equality."

Defendants' motion to dismiss plaintiffs' action must be denied. There remains for consideration the further action which this Court should take. Under the Supplemental Order of February 23, 1966, 251 F.Supp. 556, 559, the Court stayed the effectiveness of its original order *declaring* Chapter 1 of the 1964 Special Session Laws of Kansas to be constitutionally invalid until April 1, 1968. Under its subsequent orders, this Court has retained jurisdiction of this matter and has directed that in the event a valid reapportionment plan for the State Senate is not adopted by the Kansas Legislature prior to April 1, 1968, it will enter such orders as it deems appropriate, including, if necessary, an order for a valid reapportionment plan or an order directing that its members be elected at-large pending a valid reapportionment by the State itself.

 The Court takes judicial notice of the fact that the 1968 Session of the Kansas Legislature has adjourned without out exercising its right under the statutes to extend the Session. Under the Constitution of Kansas, only the Governor is authorized, on extraordinary occasions, to convene the Legislature by proclamation. Kansas Constitution, Article 1, Section 5. The time remaining for this to be done is very short, if indeed, it would be possible to do so, taking into account the requirement that the Secretary of State must, on or before April 2, 1968, prepare and transmit to each county clerk a notice, in writing, designating the offices for which candidates are to be nominated at such primary. K.S.A. 25–204.

 For the reasons stated, we now find and determine that Senate Bill 716 of the 1968 Session of the Kansas Legislature, being an act apportioning the state senatorial districts of the State of Kansas, presented to the Court with defendants' pending motion to dismiss, does not comply with the requirements of the provisions of the United States Constitution and is, therefore, held to be an invalid apportionment.

We will now pass to the decreed plan of reapportionment. In the prior opinions filed in this case we have stressed the principle that legislative apportionment is primarily a legislative function and we expressed our hope that the Legislature would perform that function in a constitutional manner thus removing any necessity for action in that field by this Court. The Legislature adjourned on March 8, 1968, without exercising the prerogative under the statute to extend the Session. We now feel legally justified in decreeing an apportionment plan for the election of State Senators in the 1968 elections. Under the mandate of the Supreme Court in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, and all of the facts of this case, we are compelled to this action. There the Supreme Court said "once a State's legislative apportionment scheme has been found to be unconstitutional, it would be the unusual case in which a court would be justified in not taking appropriate ac-

tion to insure no further elections are conducted under the invalid plan." Unless we decree an apportionment plan all of the candidates for the State Senate in both the primary and general elections would have to run in the State at-large. This would compel the candidates to campaign over the entire State, result in a very lengthy and confusing ballot for every voter in the State, and we are fearful that it would be nearly impossible for the electorate to exercise any intelligent choice as to the candidates. We must decree a plan so that the orderly processes of the State Government will go on.

We do not propose nor do we desire to make a reapportionment of the Senate Districts of the State that is permanent in any sense of the word. Such is the proper function of the State Legislature when it decides to act in a constitutional fashion. What we do now is only a stop-gap measure to be effective only until a lawful reapportionment statute is enacted.

It should be noted that although the previous Decree entered herein, in effect, held invalid the election held in 1964 for the election of the present State Senate, we have not and do not now declare vacancies in the Senate seats of the State Legislature. In the further interest of the orderly conduct of our State Government the present State Senators, within the equitable discretion of the Court, are permitted to lawfully hold their respective Senate seats until the expiration of the terms to which they were elected.

We expressly state that the reapportionment plan now decreed is not, in our judgment, a model reapportionment plan. We have been advised by the election officials of the State that they must have the new plan in their hands by March 28 in order to put the statutory election machinery into motion which will lead up to the 1968 primary and general elections. Therefore, neither time nor the information facilities available have permitted the members of this Court to make the study necessary to the molding of a so-called model plan.

The evidence before us and facts of which we take judicial notice discloses that the State has a population of 2,236,750. 1967 Annual Census, State Board of Agriculture. The State has 105 counties ranging in population from 2,523 in Stanton County to 346,461 in Sedgwick County. The Kansas law provides for 40 Senators. As we have said before, the county is the foundation of the state political system and is the ideal unit in considering the formation of Senatorial Districts.

The evidence presented to us at the last evidentiary hearing showed that the basic philosophy of the Senate in the enactment of Senate Bill 716 was twofold, admirably, they wanted to equalize the districts population-wise as nearly as possible and at the same time recognize the integrity of county boundary lines. We now accept that approach in formulating the decreed plan.

The Decree provides that the Senators allotted in the four largest Districts of the State will run at-large. The evidence presented did not include sufficient population figures to enable us to lay out Senatorial Districts within these counties. In addition, we had no evidence before us or information available to us upon which we could consider several other appropriate factors in the drawing of Senatorial boundary lines within these populous counties. The plan so decreed, as far as these counties are concerned, seems to us to be fair and equitable. Those counties will maintain the numerical strength they are entitled to as enunciated by the "one man, one vote" principle.

In formulating the plan of reapportionment we have carefully studied and analyzed the population trend in each of the new districts for the years 1963 through 1967. With this study as a basis, we have projected the trend, both increase or decline, as such is applicable

to each of the districts. A few examples may be helpful to a better understanding of the method we have employed.

Johnson County, during the five year period, used in our study, increased in population from 164,180 to 202,847, with an increase in 1967 over 1966 of 7,467. The 1968 census is now being taken and will be reported before the 1968 elections are concluded. Assuming that the population trend has continued in Johnson County during the past year it now has a population of approximately 210,000, which clearly entitled the county to four Senate positions. Shawnee County increased in population from 1966 to 1967 by 4,801. Extending this increase to the present, the 1968 census will show a population of 152,880. In order to fully justify the allocation of three Senate positions to the district we have included Wabaunsee County in this district, which gives the district a population of approximately 159,000. This population, especially in view of the present growth of Shawnee County, entitles the district to three Senate positions.

The Ninth District, comprising Labette, Neosho and Wilson Counties, is the largest district in the decreed plan, measured by population. The 1967 census shows a population decline in this district during 1966 of 918. The Seventh District, with a population of 60,198, showed a decline in population during 1966 of 683. The Twenty-fifth District, during 1966, lost 849 in population. The Twenty-eighth District lost 628 in the same year, the Twenty-sixth District lost 500 and the Twenty-fourth District lost over 1,000 during 1966. The Twenty-third District appears to be declining in population. Another of the larger districts, the Twenty-third, is located near the center of the State and appears to be declining some in population and is comprised of three counties, each relying principally upon agriculture, livestock and oil.

One of the smaller districts by population, the Eighteenth District, comprising Harvey and McPherson Counties,

historically has comprised a Senate district for many years and now appears to be gaining in population. District Twelve, one of the smaller districts in the plan, is an ideal district from the standpoint of contiguity, compactness and similarity in interests and people. District Fourteen constitutes a merger of two former Senatorial districts that existed for many years together with a small portion of Clay County added in order to bring up the population count. Districts Eleven, Two, Eighteen, Fifteen and Seventeen, each with a population below the average, are all gaining in population.

## DECREE

IT IS THEREFORE ADJUDGED AND DECREED That Senate Bill 716 of the 1968 Session of the Kansas Legislature be and the same is hereby declared to be unconstitutional for the reasons expressed in the per curiam opinion which prefaces this Decree.

Under the provisions of the original Decree entered December 28, 1965 (251 F.Supp. 541), modified by our Supplemental Order entered February 23, 1966 (251 F.Supp. 556), the Court directed that the effectiveness of its Order should be stayed until April 1, 1968, and in the event a valid reapportionment plan for the State Senate is not adopted prior to April 1, 1968, the Court would enter such orders as it deems appropriate, including an order for a valid reapportionment plan. The convening of a Special Session of the Kansas Legislature and the enactment at such a Session of a valid apportionment of the State Senate before April 1, 1968, appears highly unlikely, if not impossible.

Because the Secretary of the State of Kansas is required on or before April 2, 1968, to prepare and transmit to each county clerk a notice, in writing, designating the offices for which candidates are to be nominated at such primary, we deem it necessary to make this Decree available to the Secretary of State by filing the same forthwith. The portion

of this Decree providing for the apportionment of the senatorial districts of the State of Kansas and for the election of Senators therefrom at the 1968 general election, shall, in the absence of the enactment of a constitutionally valid senatorial apportionment statute before that time, be, and remain in force and effect from and after April 1, 1968.

IT IS FURTHER DECREED AND DETERMINED That the Districts for the election of forty Senators in the Kansas State Legislature shall be and hereby are established as follows:

| District Number | Area Comprising District | Number of Senators |
|---|---|---|
| 1 | Atchison, Jackson, Brown and Doniphan Counties | 1 |
| 2 | Jefferson and Douglas Counties | 1 |
| 3 | Leavenworth County and that part of Wyandotte County comprising the Townships of Delaware, Prairie, Shawnee and Wyandotte and the cities of Bonner Springs and Edwardsville | 1 |
| 4 | Wyandotte County except the Townships of Delaware, Prairie, Shawnee, and Wyandotte and the cities of Bonner Springs and Edwardsville | 3 |
| 5 | Johnson County | 4 |
| 6 | Osage, Franklin and Miami Counties | 1 |
| 7 | Bourbon, Allen, Coffey, Anderson and Linn Counties, and the Townships of Walnut and Sherman and the cities of Hepler and Walnut, all in Crawford County | 1 |
| 8 | Cherokee County and Crawford County except the Townships of Walnut and Sherman and the cities of Hepler and Walnut | 1 |
| 9 | Wilson, Neosho and Labette Counties | 1 |
| 10 | Montgomery, Chautauqua and Elk Counties | 1 |
| 11 | Butler, Greenwood and Woodson Counties | 1 |
| 12 | Marion, Chase, Morris and Lyon Counties | 1 |
| 13 | Shawnee and Wabaunsee Counties | 3 |

| District Number | Area Comprising District | Number of Senators |
|---|---|---|
| 14 | Nemaha, Marshall, Pottawatomie and Washington Counties and the Townships of Mulberry, Sherman, Garfield, Goshen and Highland and the cities of Morganville, Clifton, Vining and Green, all in Clay County | 1 |
| 15 | Riley and Geary Counties | 1 |
| 16 | Dickinson, Cloud, Ottawa, Lincoln and Clay Counties except the Townships of Mulberry, Sherman, Garfield, Goshen and Highland, and the cities of Morganville, Clifton, Vining and Green, all in Clay County | 1 |
| 17 | Saline and Ellsworth Counties | 1 |
| 18 | McPherson and Harvey Counties | 1 |
| 19 | Sedgwick County | 6 |
| 20 | Cowley and Sumner Counties, except the Townships of Eden, Creek, Dixon, Morris and Bluff and the City of Argonia, all in Sumner County | 1 |
| 21 | Stafford, Pratt, Barber, Kingman, and Harper Counties and the Townships of Eden, Creek, Dixon, Morris and Bluff, in Sumner County and the City of Argonia in Sumner County, and the Townships of Miami, Bell, Loda, Roscoe, Albion, Ninnescah, Sumner, Grove, Langdon, Arlington, Troy, Castleton, Haven, Sylvia, Plevna, Westminister, Center, Lincoln and Yoder and the cities of Turon, Pretty Prairie, Langdon, Arlington, Haven, Sylvia, Plevna, Abbeyville and Partridge, all in Reno County | 1 |
| 22 | Reno County except the Townships of Miami, Bell, Loda, Roscoe, Albion, Ninnescah, Sumner, Grove, Langdon, Arlington, Troy, Castleton, Haven, Sylvia, Plevna, Westminister, Center, Lincoln and Yoder, and the cities of Turon, Pretty Prairie, Langdon, Arlington, Haven, Sylvia, Plevna, Abbeyville and Partridge | 1 |

| District Number | Area Comprising District | Number of Senators |
|---|---|---|
| 23 | Russell, Barton and Rice Counties | 1 |
| 24 | Republic, Jewell, Smith, Phillips, Rooks, Osborne and Mitchell Counties | 1 |
| 25 | Ellis, Trego, Lane, Ness, Rush, Pawnee, Edwards and Hodgeman Counties | 1 |
| 26 | Gray, Ford, Kiowa, Comanche, Clark, Meade and Seward Counties | 1 |
| 27 | Greeley, Wichita, Scott, Finney, Kearney, Hamilton, Stanton, Grant, Stevens, Morton and Haskell Counties | 1 |
| 28 | Cheyenne, Rawlins, Decatur, Norton, Graham, Sheridan, Thomas, Sherman, Wallace, Logan and Gove Counties | 1 |

That in the districts where more than one Senator is hereby allotted the candidates for Senator will run at-large in both the primary and general elections subject to all of the statutes of Kansas regulating the filing and running for such office.

The offices held by the Senators in each of the multi-member senatorial districts established by this Decree, and being districts numbered 4, 5, 13 and 19, shall be separate and distinct offices. Each shall be filled by the selection of a candidate for that particular place. For the purpose of distinguishing between the offices, the positions to be filled in the respective districts at the general election of 1968, shall be numbered consecutively.

Such offices shall be designated by the proper number in each of the respective districts on all nomination petitions, declarations of candidacy, and on the primary and general election ballot; and such separate offices shall be separately printed on the ballot with the candidates for each separate office grouped thereunder.

The present State Senators shall hold their offices until the expiration of the terms for which they were elected. The term of office for each State Senator so elected under this Decree shall begin upon the expiration of the terms of office of the presently elected State Senators, and shall be for a term of four years. This provision in the Decree shall not prevent the newly constituted Legislature from enacting a valid State Senate Reapportionment Statute in which a contrary provision is made for the expiration of the terms herein fixed for State Senators elected pursuant to this Decree.

This Decree shall be binding upon all of the defendants and other public officials in the State of Kansas who perform any duty under the state statutes pertaining to elections, and they are ordered and directed to conduct the 1968 election of State Senators in Kansas in accordance herewith.

That the redistricting of the State of Kansas for the apportionment and election of the State Senate as set forth herein be complied with.

The defendants and all persons acting with or under them in the conduct of elections in the State of Kansas are enjoined from taking any steps in the furtherance or conduct of the 1968 primary and general elections in accordance with the provisions of Senate Bill 716 and Senate Bill 495 of the 1968 Session of the Kansas Legislature and Chapter 1 of the 1964 Special Session Laws of Kansas.

The Secretary of the State of Kansas, the Commissioners of Election of Johnson County, Shawnee County, Sedgwick County and Wyandotte County, and the County Clerks of the 105 counties of the State of Kansas, and all those acting by or under their authority, are hereby ordered and directed to accept filings and conduct elections only in accordance with the provisions of this Decree and Order of Reapportionment, and in conformity with the election statutes of the State of Kansas which are not inconsistent herewith. The said parties and those acting by and under their authority are enjoined from accepting filings otherwise than in conformity therewith, from conducting primary or general elections otherwise than in conformity therewith, from issuing certificates of nomination or election otherwise than in conformity therewith, from declaring results of any such election held otherwise than in conformity therewith, and from certifying to a list of nominees or State Senators determined elected otherwise than in conformity therewith.

All persons and parties are enjoined and restrained from interfering with the conduct of the electoral process in any manner, from interfering with the terms of said order in any manner, and from taking actions designed to or which will have the effect of interfering with the carrying out of this Order and Decree, except as may be provided by law for the appeal of this Order to the Supreme Court of the United States. And this Court retains jurisdiction for the purpose of making any further orders deemed necessary to insure the nomination and election of forty State Senators as provided herein.

The first opinion of this Court in this case together with the subsequent per curiam opinions shall constitute the Findings of Fact and Conclusions of Law as required by the Federal Rules of Civil Procedure.

Defendants' Motion to Dismiss be and the same is hereby denied.

The Court retains jurisdiction of this matter for such future action as is deemed advisable.

The Court, upon its own motion, substitutes Elwill M. Shanahan, the present Secretary of the State of Kansas, as a party defendant in place of Paul R. Shanahan, who is now deceased.

The Clerk of this Court shall instanter transmit to each of the defendants a copy of this Opinion and Decree for compliance therewith. The Clerk shall also enter a judgment upon the records of his office according to the Decree.