**Peggy J. CONNOR et al., Plaintiffs,**

**v.**

**Paul B. JOHNSON et al., Defendants.**

**Civ. A. No. 3830.**

United States District Court
S. D. Mississippi,
Jackson Division.

July 22, 1966.

or signals, and other usual and accepted signs, indicators, markers or signals

for the control of traffic and parking."

Peter Marcuse, Waterbury, Conn., Kunstler, Kunstler & Kinoy, William M. Kunstler and Arthur Kinoy, New York City, Smith, Waltzer, Jones & Peebles, Benjamin Smith, Bruce C. Waltzer, New Orleans, La., Morton Stavis, Newark, N. J., Carl Rachlin, Melvin L. Wulf, A.C. L.U., New York City, Alvin Bronstein,

R. Jess Brown, Jackson, Miss., for plaintiffs.

Joe T. Patterson, Atty. Gen., Martin R. McLendon, Asst. Atty. Gen., Jackson, Miss., for defendants.

Before COLEMAN, Circuit Judge, and COX and RUSSELL, District Judges.

## PER CURIAM:

The suit was filed October 19, 1965. The plaintiffs are adult, resident citizens and qualified electors of the State of Mississippi. The defendants are the three Members of the State Board of Election Commissioners, the Speaker of the State House of Representatives, and the President Pro Tempore of the State Senate.

Upon appropriate supporting factual allegations, the plaintiffs seek the reapportionment of the Mississippi Legislature in keeping with the principles enunciated in Baker v. Carr, and likewise seek to have the five Congressional Districts of the State of Mississippi rearranged by counties so that (quoting from the complaint) "Each of the Congressional Districts should contain 435,628 persons to be apportioned on a strict population basis".

■ The Court has jurisdiction of the subject matter and to hear and determine this case, Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. See also Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; Scott v. Germano, 381 U.S. 407, 85 S.Ct. 1525, 14 L.Ed.2d 477; Toombs v. Fortson, D.C., 241 F.Supp. 65; Fourteenth Amendment, Equal Protection Clause; 28 U.S.C.A. § 2281 et seq. including 28 U.S.C.A. Section 1343. In this opinion we deal only with the question of legislative reapportionment. The parties have not yet completed their proof on the matter of Congressional Redistricting. This, when ready, will be the subject of a separate opinion.

Baker v. Carr, supra, held: (1) That the district courts possess jurisdiction of the subject matter of a state legislative reapportionment case; (2) That by allegations that there was substantial inequality of population between legislative districts a justiciable cause of action was stated upon which the Court could grant appropriate relief; (3) Individual citizens, electors and taxpayers had standing to challenge the apportionment statutes of a state; and (4) That district courts possess full authority to fashion relief in appropriate cases.

The Court has full jurisdiction of the person of the election commissioners of Mississippi, or any other person or persons charged with the duty of conducting elections for Senators and members of the House of Representatives of the Mississippi Legislature, certifying the results thereof and issuing commissions to the members so elected, to assure full compliance with whatever final order is rendered in this case by enjoining them from conducting any elections, certifying the result thereof or issuing commissions of office to any person claiming to have been elected contrary thereto.

## THE MOTION TO DROP THE MISSISSIPPI FREEDOM DEMOCRATIC PARTY AS A PARTY PLAINTIFF

■ Defendants moved the Court to order the Mississippi Freedom Democratic Party dismissed and dropped from the cause as a party plaintiff, on the following grounds:

"(1) The unincorporated association does not have capacity to sue under the law of the State of Mississippi.

"(2) The unincorporated association does not allege that the suit in its common name is for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, but alleges that it ' * * * brings this suit on its own behalf and on behalf of its members.'

"(3) The unincorporated association does not possess for itself the right to vote or be represented in the Congress or the Mississippi Legislature; and it cannot affirmatively assert personal constitutional rights of or for its members; which said rights may be asserted only by the individuals possessing such rights.

"(4) Dropping the unincorporated association, which is neither a proper, necessary or indispensable party, will not materially affect the rights, if any, of the individual plaintiffs to the relief sought."

If the Rule were literally applied we have grave doubt that the Mississippi Freedom Democratic Party does have standing to sue in this particular case. We feel that deprivation of Constitutional rights is more properly to be asserted by persons, not organizations which merely claim to speak for persons, but the dismissal of the Freedoom Democratic Party will not affect this litigation; the persons who have sued in their own names will remain. Therefore, if error is to be committed either way, we prefer to err on the side of a broad interpretation of Rule 17(b) of the Federal Rules of Civil Procedure and we overrule the motion.[1] The Mississippi Freedom Democratic Party will, therefore, remain a party to this litigation and will be bound by its outcome, whatever that may be.

## SUBJECT MATTER OF THE LITIGATION

Plaintiffs allege, in substance, that the apportionment of seats in the Senate and the House of Representatives of the Mississippi Legislature contain elements of invidious discrimination against the citizens of some of the senatorial and legislative districts and in favor of the citizens of other districts. The apportionment of representation of the various counties of the State in the House of Representatives and Senate is provided for by Sections 254 and 255, Mississippi Constitution of 1890, as amended by Chapter 57, General Laws of Mississippi, Second Extraordinary Session 1962, ratified by the electorate on February 5, 1963, and inserted into the Constitution by proclamation of the Secretary of State on February 13, 1963.

The statutes implementing the constitutional amendment by establishing posts for qualification and election of members are Section 3326—Representatives and Section 3327—Senators, Mississippi Code of 1942, Recompiled.

The Court notes that the official United States Census for the various counties of the State is the only authoritative population count for all of the counties in Mississippi. Plaintiffs elected to stand on these official population reports to show the disparity of population existing in many instances throughout the State. The identical figures will be set forth in an exhibit to this opinion.

The present apportionment of the House of Representatives is in accord with the provision of the State Constitution that requires that each county have one representative. The remaining forty members of the 122 member House are divided among the more populous counties on a population basis. The multiple-member counties elect 64 members, a majority, while the one-member counties elect 58 members. A majority of the House of Representatives can conceivably be elected by counties having a combined total population of 879,123 or 40.361% of the total population of the State.

The State is divided into forty-nine senatorial districts from which fifty-two senators are elected. The more populous counties are each allotted one senator and the smaller counties population-wise are combined for the purpose of electing a senator from the combined territory. A majority of the Senate can conceivably be elected from senatorial districts hav-

---

1. "Rule 17(b) Capacity to Sue or Be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States * * *."

ing a combined total population of 810,-249, or 37.199% of the total population of the State.

In Maryland Committee for Fair Representation v. Tawes, 377 U.S. 656, 84 S.Ct. 1429, 12 L.Ed.2d 595, the Court said:

"It is simply impossible to decide upon the validity of the apportionment of one house of a bicameral legislature in the abstract, without also evaluating the actual scheme of representation employed with respect to the other house. Rather, the proper, and indeed indispensable, subject for judicial focus in a legislative apportionment controversy is the overall representation accorded to the State's voters, in both houses of a bicameral state legislature."

The apportionment of the Mississippi Legislature is more nearly equal when the representation in both the House and Senate are combined and considered together as shown on the appendix hereto. Even with this combination it cannot be rationally explained why representatives and senators from Washington County should represent 19,660 people while the representatives and senators from Claiborne and Jefferson Counties should represent only 6,996. Although the example is the extreme, there are other disparities that defy rational explanation, while some counties are properly represented under the present apportionment both in the House and Senate and when the two are combined.

No rational explanation can be given to show why 33 counties are in the group of 47 counties comprising the least possible number of people that can conceivably elect a majority of the State Senate while the same 33 counties are in the group of 51 counties that can conceivably elect the majority of the House of Representatives.

The comparison of combined House and Senate representation per county also fails when it is considered that the House has 122 members while the Senate has only 52 members.

Note is taken of the fact that the present apportionment was passed by the Legislature and approved by the electorate of the State before the cases hereinafter discussed were decided.

■ The Equal Protection Clause requires that, as a basic constitutional standard, the seats in both houses of a bicameral State legislature must be apportioned substantially on a population basis. Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506; W. M. C. A. v. Lomenzo, 377 U.S. 633, 84 S.Ct. 1418, 12 L.Ed.2d 568; Maryland Committee for Fair Representation v. Tawes, supra; Davis v. Mann, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609; Roman v. Sincock, 377 U.S. 695, 84 S.Ct. 1449, 12 L.Ed.2d 620; and Lucas v. Forty-Fourth General Assembly of State of Colorado, 377 U.S. 713, 84 S.Ct. 1459, 12 L.Ed.2d 632. See also Fortson v. Dorsey, 379 U.S. 433, 85 S.Ct. 498, 13 L.Ed.2d 401, and Burns v. Richardson, 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376, decided April 25, 1966.

The Court in Reynolds v. Sims, supra, declared the Federal analogy of a seat for each population unit regardless of its population was not applicable to State legislative bodies and said:

"Logically, in a society ostensibly grounded on representative government, it would seem reasonable that a majority of the people of a State could elect a majority of the State's legislators."

The argument that the apportionment is based upon the State Constitution, an amendment to which was approved by a majority of the electorate, was answered by the Court in Lucas v. Forty-Fourth General Assembly of State of Colorado, supra, as follows:

"We hold that the fact that a challenged legislative apportionment plan was approved by the electorate is without federal constitutional significance, if the scheme adopted fails to satisfy the basic requirements of the Equal Protection Clause, as delineated in our opinion in Reynolds v. Sims."

Likewise, in Roman v. Sincock, supra, the Court said:

"Regardless of the requirements of the Delaware Constitution and the fact that legislative apportionment has traditionally been considered a constitutional matter in Delaware, the delay inherent in following the state constitutional prescription for approval of constitutional amendments by two successive General Assemblies cannot be allowed to result in an impermissible deprivation of appellees' right to an adequate voice in the election of legislators to represent them."

## THE DECISION OF THE COURT

### I

◾ From the foregoing it follows that the apportionment provisions of the Mississippi Constitution and statutes are contrary to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and are, therefore, *invalid under the Supremacy Clause.* All of the provisions of Sections 254 and 255, Mississippi Constitution of 1890, as amended, and as they existed prior to the amendment, and Sections 3326 and 3327, Mississippi Code of 1942, Recompiled, as amended, *are hereby declared to be unconstitutional and invalid for all future elections of members of the House of Representatives and the Senate of the Mississippi Legislature.*

The Court now respectfully requests and directs the Mississippi Legislature to re-apportion itself, as it should do, and as it is capable of doing, and we make it a matter of record that we trust that such a vital legislative function will never have to be performed by the judiciary, state or federal.

We adopt the statement contained in Toombs v. Fortson, 241 F.Supp. 65 (1965), wherein the Court said:

"We deem the duty of the court in a case such as this to rest on two considerations. First, the constitutional rights of plaintiffs must be accorded, and, if possible, by the state and not the court. Second, this should be accomplished within the ambit of the public interest that is involved in allowing the state political and governmental process to function in a manner so as to do as little harm as possible to other areas and functions for which the state is responsible."

### II

◾ The invalidity of the apportionment provisions under which the present representatives and senators were elected is *prospective* only and shall not affect the term of office of the incumbents. Any vacancy that may occur in the legislature by resignation or death of a representative or senator may be filled by the electors of the district that elected the member that resigned or died.

### III

The representatives and senators to be nominated in August, 1967, and elected in November, 1967, to take office in January, 1968, shall be elected only under an apportionment plan that meets the requirements of the United States Constitution.

### IV

◾ The principal argument made for the defendants is that legislative reapportionment is primarily the responsibility of the legislature and that the Court should not interfere with this duty and responsibility. The Court agrees " * * that legislative reapportionment is primarily a matter for legislative consideration and determination, and that judicial relief becomes appropriate only when a legislature fails to reapportion according to federal constitutional requisites in a timely fashion after having had an adequate opportunity to do so." Reynolds v. Sims, supra.

This case was continued in January of this year to permit the Legislature to act on the matter of legislative reappportionment. Limited progress was made.

After failing to secure the necessary votes in both houses to amend the constitution to authorize the Legislature to reapportion itself (H.C.R. No. 49 passed the House by a substantial majority but

failed of passage in the Senate on three separate occasions), there was created, by H.C.R. No. 71, an interim study committee to study the facts and circumstances necessary for an intelligent, correct and proper reapportionment of the Legislature of the State of Mississippi.

The members of the interim study committee have been duly appointed as provided by H.C.R. No. 71. The full committee has met and organized and a subcommittee has been appointed; that subcommittee has organized and is meeting at regular intervals for the purpose of completing a report for submission to the full committee. The chairman advises the Court by affidavit that the sub-committee will complete its work and report to the full committee by August 1, 1966; and he will call sufficient meetings of the full committee to enable it to complete its work by September 15, 1966; and that the report of the committee with the recommendation that a Special Session of the Legislature be called will be filed with the Governor before October 1, 1966.

With the apportionment provisions of the State Constitution having been declared invalid, reapportionment may now be approved by a simple majority of the Legislature.

█ Obviously, the Constitutional rights of the Plaintiffs, and all other citizens, to elect a correctly apportioned legislature in 1967 can in no way be endangered if this Court should wait a further reasonable time before entering its final order in this case. We realize that whether or not a special session of the Legislature is to be called rests solely in the sound discretion of the Governor. We take note, however, that the Governor, in fact, did urge the Legislature to complete reapportionment before the end of the regular session, so we feel there is no special risk involved in granting further reasonable delay as herein set forth.

█ It is only fair to the Legislators, too, to point out that after many rigors it did succeed in enacting a Congressional Redistricting Bill, a vital element of the litigation raised by this case. Each member of the Legislature did take an oath to support the Constitution of the United States and Section 40 of the Mississippi Constitution commands him to do so. As long as the facts permit we shall certainly indulge the presumption that the Legislature will do its sworn duty.

█ If we, by reason of the failure of the Legislature to act, should be forced to enter a reapportionment of our own we do not now intimate the plan we would follow, but do point out that the members could be elected from the State at Large, Cf. Westberry v. Sanders, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481, or an equal number of Representatives and Senators could be chosen from the five Congressional Districts, if the validity of these Districts should later be upheld. Of course, sitting in equity, we could redraw the Senatorial and Representative Districts but we see no point in failing to recognize the limitations under which the Court would have to work if using that approach.

We are firmly of the view that orderly preparation for the election of Senators and Representatives in 1967 requires that a final plan for reapportionment of the Legislature, either legislatively enacted or judicially ordered, must be finally approved before December 1, 1966.

In the event a legislative apportionment plan is enacted by the incumbent legislators for the election of their successors on or before December 1, 1966, the Court will examine and consider that plan in light of the constitutional requirements and if it meets those requirements, the plan will be approved and this case dismissed. In the event the Legislature does not enact an acceptable plan on or before December 1, 1966, this Court will proceed with its own plan by which the new legislators and senators are to be elected.

That which has herein appeared shall constitute the findings of fact and conclusions of law in this case, and an order accordingly will be prepared and entered by the Court.

Any motion, plea, or pleading not herein disposed of may be considered as left pending the final Judgment in the cause, and, as already stated, we do not here deal with the matter of Congressional Redistricting.

# APPENDIX

Schedule 1

## COMPARISON OF MISSISSIPPI STATE LEGISLATIVE AREAS

### UNDER THE PROVISIONS OF SCR NO. 101 OF 1962

| Areas | Population | Number of Legislators | Population Represented By Each Legislator | Norm For State As A Whole | Over (+) Or Under (-) Norm | % Over Or Under Norm | % of State's Population Represented By Each Legislator |
|---|---|---|---|---|---|---|---|
| 10-Legislator Areas (1) | 187,045 | 10 | 18,705 | 12,518 | 6,187+ | 49.425+ | 0.859(1) |
| 7-Legislator Areas (1) | 119,489 | 7 | 17,070 | 12,518 | 4,552+ | 36.364+ | 0.784 |
| 5-Legislator Areas (4) | 198,582 | 20 | 9,929 | 12,518 | 2,589- | 20.682- | 0.456(1) |
| 4-Legislator Areas (8) | 422,003 | 32 | 13,188 | 12,518 | 670+ | 5.352+ | 0.605 |
| 3-Legislator Areas (35) | 1,251,022 | 105 | 11,914 | 12,518 | 604- | 4.825- | 0.547 |
| State Norm (Average) (49) | 2,178,141 | 174 | 12,518 | 12,518 | | | 0.575 |

(1) Difference between percentage of highest and lowest group is 0.403%.

Difference between percentage of highest group and state norm is 0.284%.

Difference between percentage of lowest group and state norm is 0.119%.

5-, 4-, and 3-Legislator Areas combined, comprising 157 members, or 90.230% of total membership of Legislature, and covering 85.927% of state's population, averages 11,921 people per Legislator against the state norm of 12,518, and also averages 0.547% of total state population per member, as against state norm of 0.575% per member, a difference of only 0.028%.

Schedule 2

## MISSISSIPPI HOUSE OF REPRESENTATIVES

### COMPUTATIONS BY COUNTY—NUMBER-OF-REPRESENTATIVES GROUPS

### UNDER THE PROVISIONS OF SCR NO. 101 OF 1962

| | Population | Number of Representatives | Population Represented By Each Representative | Norm For State As A Whole | Over (+) Or Under (-) Norm | % Over Or Under Norm | % of State's Population Represented By Each Member |
|---|---|---|---|---|---|---|---|
| One-Member Counties (58) | 919,740 | 58 | 15,858 | 17,854 | 1,996– | 11.180– | 0.728* |
| Multiple-Member Counties (24) | 1,258,401 | 64 | 19,663 | 17,854 | 1,809+ | 10.132+ | 0.903* |
| State Norm (Average) | 2,178,141 | 122 | 17,854 | 17,854 | | | 0.820* |
| One-Member Counties (58) | 919,740 | 58 | 15,858 | 17,854 | 1,996– | 11.180– | 0.728** |
| Two-Member Counties (17) | 636,582 | 34 | 18,723 | 17,854 | 869+ | 4.867+ | 0.860** |
| Three-Member Counties (5) | 315,285 | 15 | 21,019 | 17,854 | 3,165+ | 17.727+ | 0.965** |
| Six-Member Counties (1) | 119,489 | 6 | 19,915 | 17,854 | 2,061+ | 11.544+ | 0.914** |
| Nine-Member Counties (1) | 187,045 | 9 | 20,783 | 17,854 | 2,929+ | 16.405+ | 0.954** |
| State Norm (Average) | 2,178,141 | 122 | 17,854 | 17,854 | | | 0.820** |

* Difference between one-member and multiple-member counties as a whole is only 0.175%.
  Difference between one-member counties and State Norm is only 0.092%.
  Difference between multiple-member counties and State Norm is only 0.083%.

** Largest difference between highest and lowest percentage in this group is only 0.237%.
   Difference between highest percentage and State Norm is only 0.145%.
   Difference between lowest percentage and State Norm is only 0.092%.

Schedule 3

## COMPARISON OF LEGISLATIVE REPRESENTATION BY COUNTIES
### UNDER THE PROVISIONS OF SCR NO. 101 OF 1962

| County | Population | Number of Legislators | Population Represented By Each Legislator | Norm For State As A Whole | Over (+) Or Under (−) Norm | % Over Or Under Norm |
|---|---|---|---|---|---|---|
| Adams | 37,730 | 3.0 | 12,577 | 12,518 | 59+ | 0.471 |
| Alcorn | 25,282 | 1.5 | 16,855 | 12,518 | 4,337+ | 34.646 |
| Amite | 15,573 | 1.5 | 10,382 | 12,518 | 2,136− | 17.063 |
| Attala | 21,535 | 1.67 | 12,775 | 12,518 | 257+ | 2.053 |
| Benton | 7,723 | 1.5 | 5,149 | 12,518 | 7,369− | 58.867 |
| Bolivar | 54,464 | 4.0 | 13,616 | 12,518 | 1,098+ | 8.771 |
| Calhoun | 15,941 | 1.5 | 10,627 | 12,518 | 1,891− | 15.106 |
| Carroll | 11,177 | 1.5 | 7,451 | 12,518 | 5,067− | 40.478 |
| Chickasaw | 16,891 | 1.5 | 11,261 | 12,518 | 1,257− | 10.042 |
| Choctaw | 8,423 | 1.67 | 5,044 | 12,518 | 7,474− | 59.706 |
| Claiborne | 10,845 | 1.5 | 7,230 | 12,518 | 5,288− | 42.243 |
| Clarke | 16,493 | 1.5 | 10,995 | 12,518 | 1,523− | 12.166 |
| Clay | 18,933 | 1.5 | 12,622 | 12,518 | 104+ | 0.831 |
| Coahoma | 46,212 | 3.0 | 15,404 | 12,518 | 2,886+ | 23.055 |
| Copiah | 27,051 | 2.5 | 10,820 | 12,518 | 1,698− | 13.564 |
| Covington | 13,637 | 1.5 | 9,091 | 12,518 | 3,427− | 27.377 |
| DeSoto | 23,891 | 1.5 | 15,927 | 12,518 | 3,409+ | 27.233 |
| Forrest | 52,722 | 3.0 | 17,574 | 12,518 | 5,056+ | 40.390 |
| Franklin | 9,286 | 1.5 | 6,191 | 12,518 | 6,327− | 50.543 |
| George | 11,098 | 1.25 | 8,878 | 12,518 | 3,640− | 29.078 |
| Greene | 8,366 | 1.25 | 6,693 | 12,518 | 5,825− | 46.533 |
| Grenada | 18,409 | 1.67 | 11,023 | 12,518 | 1,495− | 11.943 |
| Hancock | 14,039 | 1.5 | 9,359 | 12,518 | 3,159− | 25.236 |
| Harrison | 119,489 | 7.0 | 17,070 | 12,518 | 4,552+ | 36.364 |
| Hinds | 187,045 | 10.0 | 18,705 | 12,518 | 6,187+ | 49.425 |
| Holmes | 27,096 | 3.0 | 9,032 | 12,518 | 3,486− | 27.848 |
| Humphreys | 19,093 | 1.33 | 14,356 | 12,518 | 1,838+ | 14.683 |
| Issaquena | 3,576 | 1.33 | 2,689 | 12,518 | 9,829− | 78.519 |
| Itawamba | 15,080 | 1.5 | 10,053 | 12,518 | 2,465− | 19.692 |
| Jackson | 55,522 | 4.0 | 13,881 | 12,518 | 1,363+ | 10.888 |
| Jasper | 16,909 | 1.5 | 11,273 | 12,518 | 1,245− | 9.946 |
| Jefferson | 10,142 | 1.5 | 6,761 | 12,518 | 5,757− | 45.990 |

Schedule 3

## COMPARISON OF LEGISLATIVE REPRESENTATION BY COUNTIES
### UNDER THE PROVISIONS OF SCR NO. 101 OF 1962—Cont'd

| County | Population | Number of Legislators | Population Represented By Each Legislator | Norm For State As A Whole | Over (+) Or Under (-) Norm | % Over Or Under Norm |
|---|---|---|---|---|---|---|
| Jefferson Davis | 13,540 | 1.5 | 9,027 | 12,518 | 3,491– | 27.888 |
| Jones | 59,542 | 4.0 | 14,886 | 12,518 | 2,368+ | 18.917 |
| Kemper | 12,277 | 1.5 | 8,185 | 12,518 | 4,333– | 34.614 |
| Lafayette | 21,355 | 1.5 | 14,237 | 12,518 | 1,719+ | 13.732 |
| Lamar | 13,675 | 1.5 | 9,117 | 12,518 | 3,401– | 27.169 |
| Lauderdale | 67,119 | 4.0 | 16,780 | 12,518 | 4,262+ | 34.047 |
| Lawrence | 10,215 | 1.5 | 6,810 | 12,518 | 5,708– | 45.598 |
| Leake | 18,660 | 1.67 | 11,174 | 12,518 | 1,344– | 10.737 |
| Lee | 40,589 | 3.0 | 13,530 | 12,518 | 1,012+ | 8.084 |
| Leflore | 47,142 | 3.0 | 15,714 | 12,518 | 3,196+ | 25.531 |
| Lincoln | 26,759 | 2.5 | 10,704 | 12,518 | 1,814– | 14.491 |
| Lowndes | 46,639 | 3.0 | 15,546 | 12,518 | 3,028+ | 24.189 |
| Madison | 32,904 | 3.0 | 10,968 | 12,518 | 1,550– | 12.382 |
| Marion | 23,293 | 1.5 | 15,529 | 12,518 | 3,011+ | 24.053 |
| Marshall | 24,503 | 1.5 | 16,335 | 12,518 | 3,817+ | 30.492 |
| Monroe | 33,953 | 3.0 | 11,318 | 12,518 | 1,200– | 9.586 |
| Montgomery | 13,320 | 1.5 | 8,880 | 12,518 | 3,638– | 29.062 |
| Neshoba | 20,927 | 1.5 | 13,951 | 12,518 | 1,433+ | 11.448 |
| Newton | 19,517 | 1.67 | 11,687 | 12,518 | 831– | 6.638 |
| Noxubee | 16,826 | 1.5 | 11,217 | 12,518 | 1,301– | 10.393 |
| Oktibbeha | 26,175 | 1.5 | 17,450 | 12,518 | 4,932+ | 39.399 |
| Panola | 28,791 | 3.0 | 9,597 | 12,518 | 2,921– | 23.334 |
| Pearl River | 22,411 | 1.5 | 14,941 | 12,518 | 2,423+ | 19.356 |
| Perry | 8,745 | 1.25 | 6,996 | 12,518 | 5,522– | 44.112 |
| Pike | 35,063 | 3.0 | 11,688 | 12,518 | 830– | 6.630 |
| Pontotoc | 17,232 | 1.5 | 11,488 | 12,518 | 1,030– | 8.228 |
| Prentiss | 17,949 | 1.5 | 11,966 | 12,518 | 552– | 4.410 |
| Quitman | 21,019 | 1.5 | 14,013 | 12,518 | 1,495+ | 11.943 |
| Rankin | 34,322 | 3.0 | 11,441 | 12,518 | 1,077– | 8.604 |
| Scott | 21,187 | 1.67 | 12,687 | 12,518 | 169+ | 1.350 |
| Sharkey | 10,738 | 1.33 | 8,074 | 12,518 | 4,444– | 35.501 |
| Simpson | 20,454 | 1.5 | 13,636 | 12,518 | 1,118+ | 8.931 |

Schedule 3

# COMPARISON OF LEGISLATIVE REPRESENTATION BY COUNTIES
## UNDER THE PROVISIONS OF SCR NO. 101 OF 1962—Cont'd

| County | Population | Number of Legislators | Population Represented By Each Legislator | Norm For State As A Whole | Over (+) Or Under (-) Norm | % Over Or Under Norm |
|---|---|---|---|---|---|---|
| Smith | 14,303 | 1.5 | 9,535 | 12,518 | 2,983- | 23.830 |
| Stone | 7,013 | 1.25 | 5,610 | 12,518 | 6,908- | 55.185 |
| Sunflower | 45,750 | 3.0 | 15,250 | 12,518 | 2,732+ | 21.825 |
| Tallahatchie | 24,081 | 1.67 | 14,420 | 12,518 | 1,902+ | 15.194 |
| Tate | 18,188 | 1.5 | 12,092 | 12,518 | 426- | 3.403 |
| Tippah | 15,093 | 1.5 | 10,062 | 12,518 | 2,456- | 19.620 |
| Tishomingo | 13,889 | 1.5 | 9,259 | 12,518 | 3,259- | 26.035 |
| Tunica | 16,826 | 1.5 | 11,217 | 12,518 | 1,301- | 10.393 |
| Union | 18,904 | 1.5 | 12,603 | 12,518 | 85+ | 0.679 |
| Walthall | 13,512 | 1.5 | 9,008 | 12,518 | 3,510- | 28.040 |
| Warren | 42,206 | 3.0 | 14,069 | 12,518 | 1,551+ | 12.390 |
| Washington | 78,638 | 4.0 | 19,660 | 12,518 | 7,142+ | 57.054 |
| Wayne | 16,258 | 1.5 | 10,839 | 12,518 | 1,679- | 13.413 |
| Webster | 10,580 | 1.5 | 7,053 | 12,518 | 5,465- | 43.657 |
| Wilkinson | 13,235 | 1.5 | 8,823 | 12,518 | 3,695- | 29.517 |
| Winston | 19,246 | 1.67 | 11,525 | 12,518 | 993- | 7.933 |
| Yalobusha | 12,502 | 1.67 | 7,486 | 12,518 | 5,032- | 40.198 |
| Yazoo | 31,653 | 3.0 | 10,551 | 12,518 | 1,967- | 15.713 |
| Norm (Average) | 2,178,141 | 174 | 12,518 | 12,518 | | |

NOTE: Percentage computations have been carried to three decimal places only, which is deemed enough to insure substantial accuracy.

Schedule 4

## COMPARISON OF LEGISLATIVE REPRESENTATION BY SENATORIAL DISTRICTS
### UNDER THE PROVISIONS OF SCR NO. 101 OF 1962

| Senatorial Districts And Counties Composing Same | Population | Number of Legislators | Population Represented By Each Legislator | Norm For State As A Whole | Over (+) Or Under (-) Norm | % Over Or Under Norm |
|---|---|---|---|---|---|---|
| 1 Hinds | 187,045 | 10.0 | 18,705 | 12,518 | 6,187+ | 49.425 |
| 2 Harrison | 119,489 | 7.0 | 17,070 | 12,518 | 4,552+ | 36.364 |
| 3 Washington | 78,638 | 4.0 | 19,660 | 12,518 | 7,142+ | 57.054 |
| 4 Lauderdale | 67,119 | 4.0 | 16,780 | 12,518 | 4,262+ | 34.047 |
| 5 Jones | 59,542 | 4.0 | 14,886 | 12,518 | 2,368+ | 18.917 |
| 6 Jackson | 55,522 | 4.0 | 13,881 | 12,518 | 1,363+ | 10.888 |
| 7 Bolivar | 54,464 | 4.0 | 13,616 | 12,518 | 1,098+ | 8.771 |
| 8 Forrest | 52,722 | 3.0 | 17,574 | 12,518 | 5,056+ | 40.390 |
| 9 Leflore | 47,142 | 3.0 | 15,714 | 12,518 | 3,196+ | 25.531 |
| 10 Lowndes | 46,639 | 3.0 | 15,546 | 12,518 | 3,028+ | 24.189 |
| 11 Coahoma | 46,212 | 3.0 | 15,404 | 12,518 | 2,886+ | 23.055 |
| 12 Sunflower | 45,750 | 3.0 | 15,250 | 12,518 | 2,732+ | 21.825 |
| 13 Warren | 42,206 | 3.0 | 14,069 | 12,518 | 1,551+ | 12.390 |
| 14 Lee | 40,589 | 3.0 | 13,530 | 12,518 | 1,012+ | 8.084 |
| 15 Adams | 37,730 | 3.0 | 12,577 | 12,518 | 59+ | 0.471 |
| 16 Pike | 35,063 | 3.0 | 11,688 | 12,518 | 830- | 6.630 |
| 17 Rankin | 34,322 | 3.0 | 11,441 | 12,518 | 1,077- | 8.604 |
| 18 Monroe | 33,953 | 3.0 | 11,318 | 12,518 | 1,200- | 9.586 |
| 19 Madison | 32,904 | 3.0 | 10,968 | 12,518 | 1,550- | 12.382 |
| 20 Yazoo | 31,653 | 3.0 | 10,551 | 12,518 | 1,967- | 15.713 |
| 21 Panola | 28,791 | 3.0 | 9,597 | 12,518 | 2,921- | 23.334 |
| 22 Holmes | 27,096 | 3.0 | 9,032 | 12,518 | 3,486- | 27.848 |
| 23 Alcorn, Prentiss | 43,231 | 3.0 | 14,410 | 12,518 | 1,892+ | 15.114 |
| 24 Tishomingo, Itawamba | 28,969 | 3.0 | 9,656 | 12,518 | 2,862- | 22.863 |
| 25 Tippah, Union | 33,997 | 3.0 | 11,332 | 12,518 | 1,186- | 9.474 |
| 26 Marshall, Benton | 32,226 | 3.0 | 10,742 | 12,518 | 1,776- | 14.188 |
| 27 Lafayette, Pontotoc | 38,587 | 3.0 | 12,862 | 12,518 | 344+ | 2.748 |
| 28 Tunica, Quitman | 37,845 | 3.0 | 12,615 | 12,518 | 97+ | 0.775 |
| 29 DeSoto, Tate | 42,029 | 3.0 | 14,010 | 12,518 | 1,492+ | 11.919 |
| 30 Issaquena, Sharkey, Humphreys | 33,407 | 4.0 | 8,352 | 12,518 | 4,166- | 33.280 |
| 31 Tallahatchie, Yalobusha, Grenada | 54,992 | 5.0 | 10,998 | 12,518 | 1,520- | 12.143 |

Schedule 4

## COMPARISON OF LEGISLATIVE REPRESENTATION BY SENATORIAL DISTRICTS UNDER THE PROVISIONS OF SCR NO. 101 OF 1962—Cont'd

975 at top right

| Senatorial Districts And Counties Composing Same | Population | Number of Legislators | Population Represented By Each Legislator | Norm For State As A Whole | Over (+) Or Under (−) Norm | % Over Or Under Norm |
|---|---|---|---|---|---|---|
| 32 Calhoun, Webster | 26,521 | 3.0 | 8,840 | 12,518 | 3,678− | 29.382 |
| 33 Chickasaw, Clay | 35,824 | 3.0 | 11,941 | 12,518 | 577− | 4.609 |
| 34 Attala, Choctaw, Winston | 49,004 | 5.0 | 9,801 | 12,518 | 2,717− | 21.705 |
| 35 Oktibbeha, Noxubee | 43,001 | 3.0 | 14,334 | 12,518 | 1,816+ | 14.507 |
| 36 Montgomery, Carroll | 24,497 | 3.0 | 8,166 | 12,518 | 4,352− | 34.766 |
| 37 Neshoba, Kemper | 33,204 | 3.0 | 11,068 | 12,518 | 1,450− | 11.583 |
| 38 Leake, Scott, Newton | 59,364 | 5.0 | 11,873 | 12,518 | 645− | 5.153 |
| 39 Smith, Jasper | 31,212 | 3.0 | 10,404 | 12,518 | 2,114− | 16.888 |
| 40 Clarke, Wayne | 32,751 | 3.0 | 10,917 | 12,518 | 1,601− | 12.790 |
| 41 Simpson, Covington | 34,091 | 3.0 | 11,364 | 12,518 | 1,154− | 9.219 |
| 42 Perry, Greene, George, Stone | 35,222 | 5.0 | 7,044 | 12,518 | 5,474− | 43.729 |
| 43 Hancock, Pearl River | 36,450 | 3.0 | 12,150 | 12,518 | 368− | 2.940 |
| 44 Claiborne, Jefferson | 20,987 | 3.0 | 6,996 | 12,518 | 5,522− | 44.112 |
| 45 Wilkinson, Amite | 28,808 | 3.0 | 9,603 | 12,518 | 2,915− | 23.286 |
| 46 Lincoln, Franklin | 36,045 | 4.0 | 9,011 | 12,518 | 3,507− | 28.016 |
| 47 Copiah, Lawrence | 37,266 | 4.0 | 9,317 | 12,518 | 3,201− | 25.571 |
| 48 Walthall, Marion | 36,805 | 3.0 | 12,268 | 12,518 | 250− | 1.997 |
| 49 Jefferson Davis, Lamar | 27,215 | 3.0 | 9,072 | 12,518 | 3,446− | 27.528 |
| Norm (Average) | 2,178,141 | 174 | 12,518 | 12,518 | | |

NOTE: Percentage computations have been carried to three decimal places only, which is deemed enough to insure substantial accuracy.

Schedule 5

## MINIMUM NUMBER AND PERCENTAGE OF STATE'S POPULATION REQUIRED TO ELECT A MAJORITY OF MEMBERS OF STATE SENATE UNDER THE PROVISIONS OF SCR NO. 101 OF 1962

| Senatorial District | Population | Number of Senators |
|---|---|---|
| State | 2,178,141 | 52 |
| 44 Claiborne, Jefferson | 20,987 | 1 |
| 34 Attala, Choctaw, Winston | 49,004 | 2 |
| 36 Montgomery, Carroll | 24,497 | 1 |
| 32 Calhoun, Webster | 26,521 | 1 |
| 22 Holmes | 27,096 | 1 |
| 49 Jefferson Davis, Lamar | 27,215 | 1 |
| 31 Tallahatchie, Yalobusha, Grenada | 54,992 | 2 |
| 21 Panola | 28,791 | 1 |
| 45 Wilkinson, Amite | 28,808 | 1 |
| 24 Tishomingo, Itawamba | 28,969 | 1 |
| 38 Leake, Scott, Newton | 59,364 | 2 |
| 39 Smith, Jasper | 31,212 | 1 |
| 20 Yazoo | 31,653 | 1 |
| 26 Marshall, Benton | 32,226 | 1 |
| 40 Clarke, Wayne | 32,751 | 1 |
| 19 Madison | 32,904 | 1 |
| 37 Neshoba, Kemper | 33,204 | 1 |
| 30 Issaquena, Sharkey, Humphreys | 33,407 | 1 |
| 18 Monroe | 33,953 | 1 |
| 25 Tippah, Union | 33,997 | 1 |
| 41 Simpson, Covington | 34,091 | 1 |
| 17 Rankin | 34,322 | 1 |
| 16 Pike | 35,063 | 1 |
| 42 Perry, Greene, George, Stone | 35,222 | 1 |
| Totals | 810,249 | 27 |
| % of State Totals | 37.199% | 51.923% |
| Remainder of State Totals | 1,367,892 | 25 |
| % of State Totals | 62.801% | 48.077% |

Schedule 6

## MINIMUM NUMBER AND PERCENTAGE OF STATE'S POPULATION REQUIRED TO ELECT A MAJORITY OF MEMBERS OF HOUSE OF REPRESENTATIVES UNDER THE PROVISIONS OF SCR NO. 101 OF 1962

| Counties | Population | Number of Representatives |
|---|---|---|
| State | 2,178,141 | 122 |
| Issaquena | 3,576 | 1 |
| Stone | 7,013 | 1 |
| Benton | 7,723 | 1 |
| Greene | 8,366 | 1 |
| Choctaw | 8,423 | 1 |
| Perry | 8,745 | 1 |
| Franklin | 9,286 | 1 |
| Jefferson | 10,142 | 1 |
| Lawrence | 10,215 | 1 |
| Webster | 10,580 | 1 |

Schedule 6

MINIMUM NUMBER AND PERCENTAGE OF STATES POPULATION
REQUIRED TO ELECT A MAJORITY OF MEMBERS
OF HOUSE OF REPRESENTATIVES
UNDER THE PROVISIONS OF SCR NO. 101 OF 1962—Cont'd

| Counties | Population | Number of Representatives |
|---|---|---|
| Sharkey | 10,738 | 1 |
| Claiborne | 10,845 | 1 |
| George | 11,098 | 1 |
| Carroll | 11,177 | 1 |
| Kemper | 12,277 | 1 |
| Yalobusha | 12,502 | 1 |
| Wilkinson | 13,235 | 1 |
| Montgomery | 13,320 | 1 |
| Lincoln | 26,759 | 2 |
| Walthall | 13,512 | 1 |
| Jefferson Davis | 13,540 | 1 |
| Holmes | 27,096 | 2 |
| Copiah | 27,051 | 2 |
| Covington | 13,637 | 1 |
| Lamar | 13,675 | 1 |
| Tishomingo | 13,889 | 1 |
| Hancock | 14,039 | 1 |
| Smith | 14,303 | 1 |
| Panola | 28,791 | 2 |
| Itawamba | 15,080 | 1 |
| Tippah | 15,093 | 1 |
| Amite | 15,573 | 1 |
| Yazoo | 31,653 | 2 |
| Calhoun | 15,941 | 1 |
| Wayne | 16,258 | 1 |
| Madison | 32,904 | 2 |
| Clarke | 16,493 | 1 |
| Noxubee | 16,826 | 1 |
| Tunica | 16,826 | 1 |
| Chickasaw | 16,891 | 1 |
| Jasper | 16,909 | 1 |
| Monroe | 33,953 | 2 |
| Rankin | 34,322 | 2 |
| Pontotoc | 17,232 | 1 |
| Pike | 35,063 | 2 |
| Prentiss | 17,949 | 1 |
| Bolivar | 54,464 | 3 |
| Tate | 18,138 | 1 |
| Grenada | 18,409 | 1 |
| Leake | 18,660 | 1 |
| Clay | 18,933 | 1 |
| Totals | 879,123 | 62 |
| % of State Totals | 40.361% | 50.820% |
| Remainder of State Totals | 1,299,018 | 60 |
| % of State Totals | 59.639% | 49.180% |